HEARTLAND COMMUNICATIONS, INC. and Kijopa Trading Co., Plaintiffs,

v.

SPRINT CORPORATION and Sprint Communications Co., L.P., Defendants.

No. 94–2370–JWL.

United States District Court, D. Kansas.

April 20, 1995.

Thomas H. Brill, Mission Hills, KS, Robert W. Mills, Derek G. Howard, Gilmur R. Murray, Law Offices of Robert W. Mills, San Rafael, CA, Robert M. Bramson, Barry Baskin, Edward Romero, Farrow, Bramson, Baskin & Plutzik, Walnut Creek, CA, Lloyd S. Levenson, Law Offices of Robert W. Mills, San Rafael, CA, for Heartland Communications, Inc., Kijopa Trading Co.

Lisa C. Creighton, Sprint Communications Co. L.P., Law Dept., Kansas City, MO, George S. Duesdieker, U.S. Sprint Communications Co., San Mateo, CA, Cheryl Houser, San Mateo, CA, Denise M. Anderson, VCW, Inc., Kansas City, MO, for Sprint Corp., Sprint Communications Co., L.P.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This matter is before the court on plaintiffs' motion for class certification (Doc. # 30). The plaintiffs move the court to certify as a class action Counts 1–3 and 5–8 of their complaint. Defendants oppose class certification in this matter. Oral arguments were heard on the motion on March 27, 1995. Following a thorough review of the submissions by the parties and relevant legal authorities, the court finds that plaintiffs' motion for certification should be granted.

### II. Factual Background

Sprint [1] operates a Partners Program which offers a business opportunity for outside vendors to receive commissions and, in some cases, bonuses based on customers and revenues they bring to Sprint. Sprint started the Partners Program in January of 1991.

In 1992 and 1993, plaintiffs Kijopa and Heartland, respectively, executed contracts with Sprint denominated as "Partner Programs Agreements" (the "Contracts"). Each Contract provided for various payments by Sprint to the extent that either Heartland or Kijopa solicited new customers for Sprint's long-distance telephone services. These payments were termed "commissions" and "promotion bonuses." Although the precise amount due under the contracts varied, they were otherwise similar. Each Contract recites that its interpretation is governed by Kansas law and that no waiver or modification is binding unless done in writing and duly executed by the parties.

---

**1.** Defendants Sprint Corporation and Sprint Communications Company, L.P. shall be referred to collectively as "Sprint" throughout this opinion.

Specifically, on or about September 1, 1992, Kijopa executed a Contract with Sprint which by its terms was to last until September 1, 1995. Kijopa would serve as an independent contractor for the purpose of soliciting new users for all long-distance telephone services offered by Sprint. Except for certain commissions relating to PublicFon sales, the Kijopa contract was a pre-printed, standard form document which Sprint presented to Kijopa on a "take-it-or-leave-it" basis. Pursuant to its Contract with Sprint, Kijopa solicited customers for Sprint's Hospitality, PublicFon and "1 +" long-distance services. As a result of these efforts, Kijopa generated significant revenues for Sprint and by the last quarter of 1993, Kijopa was earning commissions and bonuses from its solicitations which were in excess of $100,000.00 per month.

On or about August 4, 1993, Heartland and Sprint executed a Contract which was substantially similar to Sprint's Contract with Kijopa. Pursuant to the Contract, Heartland sold Sprint's PublicFon service.

Kijopa and Heartland contend that the commissions and bonuses due them and other Sprint Partners [2] has been systematically under-reported in two ways. They contend that Sprint made an intentional decision to pay commissions on only a subset of revenues generated by the Sprint Partners and this decision was based on an erroneous interpretation of the Sprint Partner contracts. Kijopa and Heartland also contend that the computer program established by Sprint to record the revenues generated by the Sprint Partners systematically under-reported the actual revenues generated. Specifically, Kijopa and Heartland have presented examples of phone calls made from public telephones signed up by them that should have generated commissionable revenues, however those calls never appeared in the statements received from Sprint.

As of July 1993, there were at least 600 Sprint Partners located in 400 cities nationwide. Currently, there are approximately 1020 Sprint Partners. The revenue generated to Sprint by the Sprint Partners is in excess of $100,000,000.00. Kijopa and Heartland contend that the contracts executed by the Sprint Partners are identical in all areas which would be pertinent to the issues of revenue under-reporting in this proposed class action.

Plaintiffs Kijopa and Heartland have moved the court pursuant to Fed.R.Civ.P. 23(a), 23(b)(2) and 23(b)(3) to certify a class action with themselves as class representatives. "Plaintiffs" will hereinafter refer to the purported class representatives, Kijopa and Heartland, unless otherwise noted. The plaintiffs seek to represent a class consisting of all Sprint Partners "who are entitled to commissions for all operator assisted, credit card and other long distance and/or intra-LATA and interLATA telephone calls."

## III. Standard for Class Certification

■ The determination of class certification is committed to the broad discretion of the trial court. *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982). In deciding whether to certify a class, the court must perform a "rigorous analysis" of whether the class satisfies the requirements of Fed.R.Civ.P. 23. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 158 F.R.D. 681 (D.Kan.1994). The court may not inquire, however, into the merits of the underlying case. *See Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

■ Federal Rule of Civil Procedure 23 governs the certification of class actions. Plaintiffs have the burden of proving that all four requirements of Rule 23(a) and one requirement of Rule 23(b) are met by the purported class and purported class representative. *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988). Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of

---

**2.** The term "Sprint Partners" refers to all entities which entered into Partner Program Agreements with Sprint.

law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. The plaintiffs have brought this class action under, alternatively, Rules 23(b)(2) and 23(b)(3), which provide in part:

An action may be maintained as a class action if ...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive." *Reed v. Bowen,* 849 F.2d at 1309.

### IV. Discussion

#### A. Rule 23(a) Requirements

##### 1. Numerosity

 In order to satisfy the numerosity requirement of Rule 23(a)(1), plaintiffs "must present some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex v. Owens,* 585 F.2d 432, 436 (10th Cir.1978). There is no set formula, however, for determining whether this requirement is met. *Id.* The class is sufficiently numerous if joinder of all class members is "impracticable." Rule 23(a); *Aguinaga v. John Morrell & Co.,* 602 F.Supp. 1270, 1278 (D.Kan.1985).

 In support of numerosity, plaintiffs point to the admission by Sprint that there are currently over 1000 Sprint Partners lo-

cated in a number of different states. Plaintiffs contend that this alone is adequate to demonstrate sufficient numerosity, *see Olenhouse v. Commodity Credit Corp.,* 136 F.R.D. 672, 679 (D.Kan.1991) (good faith estimate of at least 50 members sufficient size to maintain class action), and that joinder of all potential members of the proposed class would be impracticable. *See In re Home-Stake Production Co. Securities Litigation,* 76 F.R.D. 351, 361 (N.D.Okla.1977) (geographic diversity among potential claimants adds to impracticability of joinder).

Sprint, on the other hand, argues that the entire number of Sprint Partners is not the appropriate gauge of numerosity. Sprint points to the fact that unlike the more than 1000 Sprint partners who were eligible to sell over 20 different Sprint products, Heartland sold only one type of service (PublicFon). Thus, Sprint contends that Heartland could properly represent only those Sprint Partners who sold PublicFon. Sprint contends that only 67 Partners sold PublicFon and, of that number, only a small number accounted for the lion's share of revenue attributable to this type of service.

The court finds that Sprint's argument, which actually relates more to the typicality requirement than the numerosity requirement, does not operate to defeat plaintiffs' class certification request. There is no requirement that the claims of the representative plaintiffs be identical to those of other class members. *Olenhouse,* 136 F.R.D. at 680. Plaintiffs contend that all Sprint Partners, regardless of the service they were selling, failed to receive the proper commissions due them under the Contracts. If it later becomes apparent that Partners selling other Sprint services did not suffer similar injuries to plaintiffs, those Partners could be eliminated from the class. Similarly, if it later becomes apparent that Partners selling certain types of services are not adequately represented by the named representatives, the court may require substitution or addition of a class representative or, alternatively, modify the class definition to exclude such purchasers. *See Fisher Bros. v. Mueller Brass Co.,* 102 F.R.D. 570, 575–76 (E.D.Pa. 1984).

## 2. Commonality

■ The court finds that plaintiffs have shown that there are questions of law or fact which are common to the entire class, thus satisfying Rule 23(a)(2). Among the questions which are common to the entire class are: (1) whether Sprint made an intentional decision to pay commissions on only a subset of revenues generated by the Sprint Partners and this decision was based on an erroneous interpretation of the Sprint Partner contracts; (2) whether the computer program established by Sprint to record the revenues generated by the Sprint Partners systematically under-reported the actual revenues generated; and (3) whether the "exculpatory clause," which is contained in all the Sprint Partner Contracts and purports to limit Sprint's damages, is valid under Kansas law.

Sprint argues that the commonality requirement is not satisfied because the Contracts executed by the Sprint Partners were not uniform. However, Sprint merely makes a bald statement that differences in the contracts destroy commonality and gives no examples of differing contracts or analysis as to why those differences would destroy commonality. On the other hand, plaintiffs have presented 65 Contracts, 61 of which have a virtually identical definition of revenue. The other 4 are identical to each other and contain a newer definition of revenue. Plaintiffs contend that the difference in the definition of revenue does not prevent the class from proceeding as one. The court finds that plaintiffs have presented sufficient evidence to rebut Sprint's unsupported argument that differences in the Contracts destroy the commonality requirement.

## 3. Typicality

■ The typicality element requires that the representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members. *Olenhouse,* 136 F.R.D. at 680. This requirement does not mandate, however, that the claims of the representative plaintiffs be identical to those of other class members. *Id.* Rather, the court should look to whether the claims of the representative plaintiffs are "significantly antagonistic" to the claims of the proposed class. *Id.*

■ Plaintiffs point out that their claims are typical to those of the proposed class members in that they all entered into identical Sprint Partner Contracts with Sprint and that the same legal theories advanced by the plaintiffs apply to the entire proposed class. Plaintiffs further contend that the type of harm suffered by the representative plaintiffs is of the same type as the harm suffered by the proposed class.

The court finds that plaintiffs' claims are typical of, and not significantly antagonistic to, those of the proposed class. Accordingly, the court finds that plaintiffs have met the requirement set forth in Rule 23(a)(3).

## 4. Adequacy of Representation

■ Adequacy of representation is met when (1) the interests of the class members are neither antagonistic to, nor in conflict with, those of the class and (2) counsel for the representative plaintiffs is qualified to conduct the litigation as a class. *See Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 676 (D.Kan.1989); *Aguinaga v. John Morrell & Co.,* 602 F.Supp. 1270, 1278–79 (D.Kan.1985).

■ Sprint attacks the adequacy of plaintiffs' representation of the class on two grounds, neither of which the court finds has merit. First, Sprint argues that the assertion of counterclaims against the named plaintiffs renders the class representatives inadequate. Sprint has brought counterclaims asserting that Kijopa and Heartland received excessive bonus payments from Sprint based on telephone numbers submitted by the plaintiffs which were not eligible for Sprint service.

■ The mere existence of a counterclaim does not preclude class certification. Were it otherwise, every motion for class certification would be defeated simply by the vehicle of filing a counterclaim against the named plaintiffs. It is only where a counterclaim raises a conflict between the interests of the named plaintiff and the absent class members that causes adequacy of representation to be lacking. *See, e.g., International*

*Woodworkers of America, AFL–CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269 (4th Cir.1981). In the present case, Sprint has not enunciated what conflict is created between the interests of the absent class members and the plaintiffs as a result of Sprint's counterclaims, nor is any conflict of interest readily apparent to the court.[3]

The court finds that the plaintiffs have demonstrated that they and their counsel will adequately represent the proposed class, and that their interests are not antagonistic to the interests of the proposed class members. Thus, the court finds that plaintiffs have satisfied the requirements of Rule 24(a)(4).

### B. Rule 23(b) requirements

Having met the requirements of Rule 23(a), plaintiffs have the burden to demonstrate that the proposed action fits within one of the categories described under Rule 23(b). In this case, plaintiffs seek to proceed under both 23(b)(2) and 23(b)(3).

#### 1. Rule 23(b)(2)

■■■ Rule 23(b)(2) generally applies to situations in which injunctive relief is sought. For a class certification under Rule 23(b)(2) to be appropriate, injunctive or declaratory relief must be the predominant remedy requested for class members. *See* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 4.12 (3d ed. 1992). However, this requirement does not preclude the award of monetary recoveries on a classwide basis provided the monetary relief is either part of the equitable relief granted or is secondary or ancillary to the predominant injunctive or declaratory relief sought. The test for certification under Rule 23(b)(2) is not the relief sought by plaintiffs, but whether the crux of the action is for money damages. *See In re School Asbestos Litigation*, 789 F.2d 996, 1008 (3rd Cir.1986).

■■■ The court finds that it is clear from the stated causes of action contained in plaintiffs' complaint that the predominant relief requested is monetary damages for Sprints' alleged breach of contractual obligations. Further, the present action is not similar to those instances in which class certification has been approved pursuant to both 23(b)(2) and 23(b)(3). Those cases typically involve discrimination or civil rights suits where the main relief sought is injunctive, but damages may also be awarded. *See Newberg, supra* at § 4.14. Accordingly, the court finds that certification pursuant to 23(b)(2) is not appropriate.

#### 2. Rule 23(b)(3)

Rule 23(b)(3) requires that plaintiffs demonstrate that common questions of law or fact predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly adjudicating the controversy. The court finds that the plaintiffs have satisfied the requirements for class certification under Rule 23(b)(3).

■■■ There is considerable overlap between Rule 23(a)(2) and 23(b)(3). The Rule 23(a)(2) prerequisite requires that common questions exist. Rule 23(b)(3) requires that they predominate. The predominance requirement is met if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication. *See Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665 (D.Kan.1989); *Joseph v. General Motors Corp.*, 109 F.R.D. 635 (D.Colo.1986). The court finds that the common questions in this case satisfy the predominance test. The critical issues for trial raised in the complaint are whether Sprint's accounting methods systematically underreported revenues generated by the Sprint Partners and interpretation of the Sprint Partner contracts pursuant to Kansas law. The court finds that

---

**3.** Sprint also argues that the plaintiffs may not properly pursue litigation in the State of Kansas pursuant to the gate closing statutes of K.S.A. 17–7301 and 17–7302 due to the plaintiffs' failure to obtain authority to do business in Kansas. Sprint notes that it is not seeking summary judg-ment on this point, and presents no analysis of the issue. Without making a ruling on the possible merits of Sprint's argument, the court finds that the mere raising of this issue by Sprint does not warrant denial of plaintiffs' class certification motion.

these questions predominate over individual questions as to each Sprint Partner.[4]

In summary, the court, having found the requisites of Rule 23 satisfied, will certify the proposed class on Counts 1–3 and 5–8. In reaching this result, the court is mindful of the Tenth Circuit's mandate that "if there is error to be made, let it be in favor and not against the maintenance of a class action." *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968). Further, the court notes that if it is later apparent that a class action is not the most efficient form of litigating this controversy, the court may decertify the class.

### C. Jurisdiction

In *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court held that for state law class actions arising under diversity jurisdiction, the claims of each member of the class must exceed the minimum amount in controversy required for diversity jurisdiction. In the present case, Sprint argues that the plaintiffs' motion for class certification should be denied due to the plaintiffs' failure to present evidence regarding the monetary value of the claims of the proposed class members.

The continued viability of *Zahn* is in question following the 1990 enactment of a supplemental jurisdiction statute by Congress, 28 U.S.C. § 1367. Under the plain language of the statute, it appears that diversity of citizenship class actions in which not all class members meet the $50,000 amount in controversy requirement may go forward under the supplemental jurisdiction statute due to the statute's failure to include in its list of exceptions any reference to Rule 23. However, the legislative history of the statute indicates that there was no intention to affect class jurisdiction. No circuit court has yet ruled on this issue. However, the Third Circuit, in *Packard v. Provident Nat. Bank,* 994 F.2d 1039 (3rd Cir.1993) noted that the question over *Zahn's* status after § 1367 has spawned

a serious dispute and cited both decisions and scholarly articles representative of the positions taken by the pro-*Zahn* and anti-*Zahn* factions.

The court finds that regardless of the continued viability of *Zahn,* Sprint's contention that the plaintiffs' motion for class certification should be denied due to the plaintiffs' failure to present evidence regarding the monetary value of the claims of the proposed class members fails. It is true that a significant number of the Sprint Partners may not meet the jurisdictional minimum, indeed plaintiffs admit as much. However, *Zahn* does not require that an entire class action be dismissed for lack of subject matter jurisdiction over some of the class members. Rather the court is required to dismiss only those class members whose claims appear to a legal certainty to be less than the jurisdictional amount. *See In re School Asbestos Litigation,* 921 F.2d 1310, 1315 (3rd Cir. 1990).

Sprint suggests that class certification should be denied unless and until plaintiffs affirmatively prove that each and every class member has a claim in excess of $50,000. Sprint's argument was expressly rejected by the Third Circuit in *In re School Asbestos Litigation, supra,* wherein the court specifically noted that lack of subject matter jurisdiction over some class members does not require dismissal of a class action with regard to other class members. 921 F.2d at 1315. The Third Circuit held that an appropriate procedure is to grant class certification (assuming it is proper) and subsequently dismiss those particular class members, if any, who appear to a legal certainty to have insufficient claims. *Id.* This court agrees with the Third Circuit's analysis. At this early stage of the proceedings, the plaintiffs simply are not in a position to be able to have investigated and determined which potential class members may have claims in excess of $50,000. The court believes this issue should properly be addressed at the summary judgment stage, after the parties have had a

---

**4.** A possible problem does arise, however, with regards to plaintiffs' tort claims for breach of fiduciary duty and unjust enrichment. Such claims may be subject to the laws of different states as to the class members. If, upon later

motion of the defendant, the court ultimately determines that there are numerous substantively different state laws which apply to one or both of the tort claims, certification of those claims will be reconsidered at that time.

chance to conduct discovery as to the claims of the other potential class members.

### D. Notice

In their papers, plaintiffs represent that they are willing to bear the costs of class notice. To that end, Sprint is directed to provide to the plaintiffs the names, addresses and telephone numbers of all Sprint Partners who are potential members of the class. Plaintiffs are directed to prepare an order regarding notice for approval by the court that complies with the requirements of Rule 23(c).

### V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** plaintiffs' motion to certify class action (Doc. # 30) is granted as to Counts 1–3 and 5–8 of plaintiffs' complaint. Defendant Sprint is directed to provide to the plaintiffs the names, addresses and telephone numbers of all Sprint Partners who are potential members of the class. Plaintiffs are directed to prepare an order regarding notice for approval by the court that complies with the requirements of Rule 23(c).

**IT IS SO ORDERED.**

