Jeannie HARDING, Plaintiff,

v.

TAMBRANDS INC., Defendant.

Sandra D. HAYES, Plaintiff,

v.

PLAYTEX FAMILY PRODUCTS CORP., Defendant.

Civil Action Nos. 94–1195–FGT, 95–1316–FGT.

United States District Court, D. Kansas.

March 15, 1996.

Mark B. Hutton, Andrew W. Hutton, Hutton & Hutton, Wichita, KS, Tom Riley, Tom Riley Law Firm, Cedar Rapids, IA, Martis Ann Brachtl, Louis Gottlieb, Goodkind, Labaton, Rudoff & Scuharow, L.L.P., New York City, Robert J. Perkins, The Perkins Law Firm, Kansas City, MO, for Jeannie Harding.

Mark B. Hutton, Andrew W. Hutton, Hutton & Hutton, Wichita, KS, Tom Riley, Tom Riley Law Firm, Cedar Rapids, IA, Martis Ann Brachtl, Goodkind, Labaton, Rudoff & Scuharow, New York City, Robert J. Perkins, The Perkins Law Firm, Kansas City, MO, for Sandra D. Hayes, Edward Hayes.

Roger E. Podesta, Anne E. Cohen, Mary Beth Hogan, Debevoise & Plimpton, New York City, Kurt L. Rasmussen, Melody L. Nashan, John K. Power, Watson & Marshall L.C., Kansas City, MO, for Tambrands Inc.

Thomas N. Sterchi, Patricia A. Sexton, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, William H. Robinson, Jr., Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, VA, Adele Baker, Wright, Robinson, McCammon, Osthimer & Tatum, Washington, DC, Richard M. Cooper, Paul Mogin, Williams & Connolly, Washington, DC, R. Douglas Gentile, Douthit, Frets, Rouse & Gentile, Overland Park, KS, Phillip C. Rouse, Douthit, Frets, Rouse & Gentile, Kansas City, MO, for Playtex Family Products Corp.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the plaintiffs' motion for class certification (Doc.

31, filed in Case No. 94–1195). These two cases were originally filed as one civil action by both of the plaintiffs listed above against both the defendants. Upon various objections of the defendants, the parties agreed to sever the case into two separate civil actions. The motion for class certification was filed and briefed prior to the severance.

The plaintiffs seek the certification of two classes of plaintiffs pursuant to both Rule 23(b)(3) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs seek to certify a class of all residents or domiciliaries of the United States who suffered damages from Toxic Shock Syndrome (TSS) caused by using tampon products containing viscose rayon manufactured after February 1985 by defendant Tambrands Inc. (the Tampax class). Similarly, plaintiffs seek to certify a class of all residents or domiciliaries of the United States who suffered damages from TSS caused by using tampon products containing viscose rayon manufactured after February 1985 by defendant Playtex Family Products Corp. (the Playtex class).

The plaintiffs assert that prior to February 1985, the defendants became aware that tampon products containing viscose rayon posed a greater risk for TSS than tampon products made of 100% cotton. Plaintiffs assert that the defendants had actual knowledge that an all cotton tampon would provide the lowest risk of TSS. Plaintiffs allege that the defendants engaged in fraudulent conduct, made false statements of material fact and failed to disclose material facts regarding the alleged link between viscose rayon and TSS risk. Plaintiffs further assert that any applicable statutes of limitations have been tolled by the defendants' acts of fraudulent concealment or, alternatively, that the defendants are estopped from relying on the statute of limitations.

The plaintiffs' complaints contain claims based on fraud and deceit, negligent misrepresentation, violation of state consumer protection statutes, breach of express warranty, breach of implied warranty, intentional infliction of emotional distress, negligence and strict liability. Plaintiffs seek actual and punitive damages. Plaintiffs also seek equitable relief in the form of the creation of a court-supervised medical monitoring program to monitor the health of the plaintiff class members and a fund to pay for medical costs. Doc. 1 in Case No. 94–1195; Doc. 2 in Case No. 95–1316.[1]

 The determination of class certification is committed to the broad discretion of the trial court. *Boughton v. Cotter Corp.*, 65 F.3d 823, 826 (10th Cir.1995). In deciding whether to certify a class, the court must perform a "rigorous analysis" of whether the class satisfies the requirements of Fed. R.Civ.P. 23. *National Union Fire Ins. Co. v. Midland Bancor, Inc.*, 158 F.R.D. 681 (D.Kan.1994). The court may not inquire, however, into the merits of the underlying case. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

 Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. Plaintiffs have the burden of proving that all four requirements of Rule 23(a) and one requirement of Rule 23(b) are met. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988).

All class actions must satisfy the prerequisites of Rule 23(a):

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative

---

1. The plaintiffs have purported to file separate amended complaints in Case No. 94–1195. A review of the docket sheet and the case file indicates that plaintiffs never filed a motion for leave to amend their complaint. The two proposed amended complaints were attached as exhibits to plaintiffs' response (Doc. 42) to the defendants' individual motions to dismiss. While the Magistrate Judge signed a stipulated order (*see* Doc. 50) stating that plaintiff Hayes'

complaint was "deemed filed" as of March 10, 1995, the complaint itself has never been filed as a separate pleading.

Although the amended complaints have not been filed, the court has nevertheless reviewed the allegations contained in the proposed amended complaints. Those allegations do not differ significantly from those contained in the original combined complaint.

parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

The class action must also satisfy one of the provisions of Rule 23(b). The plaintiffs seek certification under Rule 23(b)(3), but alternatively seek certification of their medical monitoring claim under Rule 23(b)(2). Those provisions provide:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(2)–(3).[2]

Alternatively, if the court were to deny certification of the cases as a whole, the plaintiffs seek certification as to individual issues pursuant to Rule 23(c)(4):

When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, ... and the provisions of this rule shall then be construed and applied accordingly.

Fed.R.Civ.P. 23(c)(4)(A).

## I. Requirements of Rule 23(a)

### A. Numerosity

While both defendants take issue with plaintiffs' estimates of the size of the potential classes (between 14,275 and 69,000 in the Tampax class; 6,500 to 32,000 in the Playtex class), neither defendant seriously disputes that the numerosity requirement has been satisfied.

### B. Commonality

Plaintiffs identify in their motion to certify the following common issues: whether the defendants' tampon products containing viscose rayon are defective and unreasonably dangerous; whether the use of tampon products containing viscose rayon causes injury; whether the defendants negligently designed their products by using viscose rayon with the knowledge that all cotton would provide the safest product; whether the defendants are strictly liable in tort for selling a defective product; whether the class members are entitled to injunctive relief; whether the class is entitled to compensatory damages, and if so, the nature of such damages; and whether the defendants are liable for punitive damages.

■ The requirement of Rule 23(b)(3) that common questions predominate over questions affecting only individuals is a more stringent requirement than Rule 23(a)(2)'s requirement of the existence of common questions of fact or law. The commonality question under Rule 23(a)(2) is subsumed within the predominance determination under Rule 23(b)(3). *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 423 (D.N.M.1988). Therefore, the court will not address the commonality issue separately.

---

**2.** In their complaints, the plaintiffs also asserted that class certification would be appropriate under Rule 23(b)(1). Plaintiffs did not raise that subdivision in their briefs on the motion to certify or at oral argument. The court deems that argument abandoned.

### C. Typicality and Adequacy of Named Plaintiffs

■ The Rule 23(a)(3) requirement of typicality and the Rule 23(a)(4) requirement that the named representative adequately represent the entire class overlap. *Id.* If the class representative's claims are not typical of the class, the representative cannot adequately protect the interests of the absent class members. *Id.* at 423–24.

■ The typicality requirement assures that the claims of the class representative are similar enough to the claims of the class that she will adequately represent them. The class representative must possess the same interest and suffer the same injury as the class members. *Id.* at 424. Typicality does not demand identical factual circum-. stances; however, the claims of the named plaintiffs and the class members must be based on the same legal or remedial theory. *Id.* at 430.

Tambrands argues the plaintiff Harding did not suffer TSS and, therefore, her claims are not typical of the claims of the proposed class and that she will not adequately represent the class. Tambrands argues that Harding's treating physician diagnosed her ailment as pelvic inflammatory disease. Tambrands further asserts that Harding's credibility is seriously damaged by her claims that she had TSS. However, whether plaintiff Harding suffered from TSS and if so, whether it was caused by her use of Tampax tampons goes to the merits of the plaintiff's claim. The court shall not attempt to resolve this difficult issue at this time.

■ Tambrands further argues that Harding is an inadequate class representative as to the fraudulent concealment claim. Playtex similarly argues that Hayes is an inadequate class representative in that she lacks standing to pursue a fraudulent concealment claim. Neither named plaintiff can make a claim that fraudulent concealment tolled the statute of limitations since both plaintiffs filed their claims within the statute of limitations.

The problem noted by defendants is not one that should by itself defeat class certification. The court could allow intervention by another member of the proposed class or the addition of a named plaintiff who would satisfy the requirements of typicality and adequacy of representation. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988). If necessary, a class member with a time barred claim could be added to represent the interests of that part of the class.

Tambrands argues that Harding cannot state a claim for medical monitoring. Playtex likewise argues that Hayes is not an adequate class representative because she lacks standing to pursue a claim for medical monitoring. The defendants' arguments invite the court to consider the merits of the medical monitoring claim, which the court declines to do at this time. Whether plaintiffs can state a claim for medical monitoring is the subject of a pending motion to dismiss.

### D. Adequacy of Counsel's Representation

Competence of counsel is the other portion of the Rule 23(a)(4) adequacy test. *Sollenbarger,* 121 F.R.D. at 423. The general skill and abilities of plaintiffs' counsel are not questioned by the defendants.

Playtex does argue that a conflict of interest exists regarding some of plaintiffs' counsel. One of the attorneys representing Hayes represents other putative class members in individual lawsuits against Playtex. Plaintiff Hayes is seeking a mandatory (non-opt out) class under Rule 23(b)(2) on the medical monitoring claim. Playtex argues that class certification would not be in the interest of other putative class members who have already filed suits against Playtex in other jurisdictions. Since the court has determined, for other reasons, not to certify a medical monitoring class under Rule 23(b)(2), the court does not find it necessary to resolve these allegations.

■ Playtex also argues that a conflict exists between the interests of Hayes and her counsel and the interests of other members of the proposed class. As pointed out in the briefs, a number of jurisdictions have longer tort statutes of limitations than the two year statute in effect in Kansas. Playtex argues that the claims of many members of

the proposed class would not be time barred in their home states but would be time barred in Kansas. Playtex argues that these individuals could file timely suits in their home states without having to overcome the presumptive bar of the statute of limitations in Kansas. Playtex argues that this creates a conflict of interest between class counsel and those class members who would not be time barred in their own states but who might face a time bar in Kansas.

Plaintiffs argue that if their fraudulent concealment claim survives, the statute of limitations will not be a defense. If, however, that claim fails, the court could redefine the class to exclude all claimants whose claims were untimely. Those claimants who were not time barred in their home jurisdictions could still file suit there.

While the varying statutes of limitations present yet another complication to the proposed class action, the court does not find this to be a conflict of interest sufficient to justify denial of class certification.

## II. Requirements of Rule 23(b)(3)

### A. Predominance

■■■■ The determination of whether common issues predominate is committed to the trial court's discretion. *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir.1995). The predominance requirement ensures that claims of class members will be so similar that prosecution by a few members of the class will be fair. *Sollenbarger*, 121 F.R.D. at 433. The test followed in the Tenth Circuit focuses on whether the claims involve a common nucleus of operative facts and whether material variations in the claims exist. *Edgington v. R.G. Dickinson and Co.*, 139 F.R.D. 183, 190–91 (D.Kan.1991).

In their motion for class certification, plaintiffs identify the following legal and factual questions which they claim predominate over any individual issues: whether defendants' viscose rayon tampon cause injury; whether defendants' viscose rayon tampons are defective; whether defendants knew when they sold their viscose rayon tampons that all cotton tampon products would provide the lowest risk for TSS; whether the

defendants made misrepresentations; whether defendants are strictly liable in tort; whether defendants were negligent; and whether defendants' alleged wrongful conduct makes them liable for punitive damages. Doc. 31 at pp. 29–30. Plaintiffs acknowledge that individual causation and damages are matters which must be left for subsequent individual adjudication.

■■■■ The court has concluded that legal questions are common only in a very general sense, but they do not predominate. While the issues may be the same in all cases (e.g., were defendants negligent), the legal standards governing them are not the same throughout the country. The court would be required to apply the substantive law of the state where the claim of each class member arose, and not Kansas substantive law. *E.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The defendants spend many pages in their briefs discussing the different (and sometimes contradictory) legal standards applicable to the plaintiffs' various claims. Those variations in the law are not disputed by the plaintiffs.

There are common issues of fact presented by the allegations in this case, such as whether all cotton tampons pose the lowest risk of TSS, what each defendant knew about the relative risks of cotton and rayon tampons, and when each defendant might have known it. In fact, a consolidated factual presentation as to the generally applicable factual issues might be fairly straightforward. However, significant common issues of law are lacking due to the many variations in the law of the various jurisdictions on each of the claims. There is no one standard of negligence, for example, which would be applicable to all members of the plaintiff class. The law of negligence is not uniform and cannot be abstracted into a single instruction. *In re Rhone–Poulenc Rorer Inc.*, 51 F.3d 1293, 1300–01 (7th Cir.) (writ of mandamus ordering district court to decertify nationwide class action), *cert. denied*, ——— U.S. ———, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995).

Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the court must consider how the law of negligence

differs from jurisdiction to jurisdiction. "If more than a few of the laws of the fifty states differ, the court would face an impossible task of instructing a jury on the relevant law," indicating that class certification would not be appropriate. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1076–77 (6th Cir.1996) (writ of mandamus ordering district court to decertify nationwide class action).

The potential for numerous different subclasses weighs against a finding of predominance of common issues. During the time frame encompassed by the class definition, the defendants each marketed a number of different styles of tampons. The defendants made various changes in fiber composition and absorbency during the relevant time period. According to the plaintiffs' theory of liability, however, the percentage of rayon in each particular style of tampon is irrelevant. Plaintiffs assert that any amount of viscose rayon in a tampon makes that product unreasonably unsafe for its intended use. Without addressing complex issues going to the merits of plaintiffs' claims, the court cannot resolve this particular issue. If plaintiffs' theory on the use of viscose rayon prevails, there would be little or no need for subclasses to account for the various tampon styles and formulations. If, however, plaintiffs' theory did not prevail, the class potentially could be splintered into dozens of subclasses, with common issues only as to the particular formulation of tampon.

Certification would not materially advance the disposition of the litigation as a whole. A finding of "general causation" would do little to advance this litigation. Even a determination that an all cotton tampon is safer than a tampon containing any amount of rayon would not end the inquiry. The individual issues regarding causation (including whether the plaintiff had TSS and whether it was caused by her use of the defendant's tampons) and damages could not be addressed in the class trial but would remain for individual adjudication.

During the early days of TSS litigation, three efforts were made to consolidate TSS litigation. The Judicial Panel on Multidistrict Litigation denied a motion to consolidate 92 pending TSS cases involving the Rely tampon. In a brief per curiam opinion, the Panel stated, "Although we recognize that the actions in this litigation involve some common questions of fact, we are not persuaded that these common questions of fact will predominate over individual questions of fact present in each action." *In re Rely Tampon Products Liability Litigation,* 533 F.Supp. 1346, 1347 (J.P.M.L.1982). Although this finding is not dispositive, the decision of the Judicial Panel on Multidistrict Litigation is an important consideration in the court's decision not to certify a class. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1081–82, 1084–85 (6th Cir.1996).[3]

A motion for certification of a nationwide class of Rely tampon users was denied in *Thompson v. Procter & Gamble Co.,* 1982 WL 114 (N.D.Cal.1982), even though over 650 lawsuits were pending involving the Rely tampon. The court noted the refusal to consolidate the Rely cases for Multidistrict Litigation treatment. The court found that a class action would not be superior in terms of fairness and efficiency. Since only narrow issues could be certified for class treatment, no significant savings of time would result. The court concluded that the predominance of issues affecting each individual class member strongly militated against certification. *Id.*

Finally, in *Wolf v. Procter & Gamble Co.,* 555 F.Supp. 613 (D.N.J.1982), the court denied a motion to intervene filed by 20 plaintiffs in 13 separate actions involving the Rely tampon. The parties moved to intervene for the purpose of determining the fact of the defendant's liability to them, i.e., their right to actual and punitive damages. The intervenors wished to exclude the issues of individual causation and damages, which would be litigated in the courts in which they originally brought suit. *Id.* at 627.

---

**3.** As a long-time member of the M.D.L. panel of transferee judges, the undersigned has become well acquainted with the decisions of the Judicial Panel on Multidistrict Litigation which determine the suitability of cases for multidistrict treatment. This court has been impressed with the legal ability of the Panel in its decisions, which have contributed greatly to the development of the law in complex cases.

The court determined that the intervenors did not share any common questions of law with the plaintiffs, since the plaintiffs' claims arose under New Jersey law and the claims of the intervenors arose under the laws of other states. The court noted a common, but narrow, factual issue regarding whether a component of the Rely tampon could break down into a substance that promotes the growth of the bacteria which causes TSS. *Id.* Since extensive legal and factual issues would remain to be litigated individually, including the issue of causation, intervention was denied. *Id.* at 628.

As these decisions reflect, the previous attempts to consolidate TSS litigation have been rejected by the courts, primarily because individual issues predominate over common issues. This court likewise finds that common issues do not predominate.

## B. Superiority

After considering the relevant factors, the court has concluded that a class action would not be a superior method for the fair and efficient adjudication of the controversy. Certification of a nationwide class would present tremendous problems of manageability.

### 1. Interest in individual prosecution of actions

Individual adjudication of TSS cases has been the norm. As discussed above, consolidated treatment of TSS cases was denied early in the history of TSS litigation when hundreds of cases were pending. TSS litigation has continued to move through the courts for some fifteen years without consolidated treatment. The same reasons supporting the denial of consolidated treatment for TSS cases in the early 1980s are still applicable today.

### 2. Nature and extent of litigation already commenced

By all accounts, there is little TSS litigation pending today. No flood of litigation is threatening to overwhelm the courts.

### 3. Desirability of concentrating litigation in forum

Both plaintiffs are Kansas residents. Both defendants transact business within this state. Therefore, jurisdiction and venue requirements have been met. However, there is no reason apparent to this court for concentrating this litigation in this forum, other than the location of the office of one of plaintiffs' attorneys.

Defendants argue that the Kansas statute of limitations, which is shorter than statutes of limitations applicable in half the states, would result in the barring of many claims which would be timely if filed in the class members' home states. This court may apply the Kansas statute of limitations to the nonresident class members, even if it results in a time bar. *Sun Oil Co. v. Wortman*, 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988). The application of the Kansas statute of limitation to claims which would be timely in another jurisdiction adds a further element of complexity to this case.

### 4. Difficulties in management

The defendants argue that it would be difficult to identify members of the class, since membership in the class requires proof of matters (TSS resulting from use of defendants' tampons) closely related to the ultimate liability issues. Defendants argue additionally that some class members may not have had TSS (as Tambrands alleges regarding Harding). The court agrees with plaintiffs that the court could not, under the guise of identifying the class members, determine issues going the merits of liability. Counsel for plaintiffs argued at the hearing that many women may have had TSS and not known it. The court does not know how it could identify and notify persons who are unaware that they have suffered an injury. Assuming the court could come up with an adequate means of identifying and notifying class members, the court still has concerns about the manageability of the case.

By plaintiffs' estimates, the two classes would consist of tens of thousands of women residing in all 50 States and the District of Columbia. The court would be required to apply the law of 51 jurisdictions to each of

the nine separate claims raised in the complaints. Defendants' briefs discuss at length the numerous differences in state laws applicable·to the various claims raised by the plaintiffs. The court shall not burden this opinion with a similar survey of the law.

The jury instructions and verdict form used to submit the matter to the jury would be extremely complicated given these numerous differences in the law applicable to the various claims. Plaintiffs argue that carefully crafted jury instructions and special verdict questions will allow the jury to make sense of the issues presented. Plaintiffs assert that this court is more than capable of crafting jury instructions and a verdict form to handle the many issues fact and law. The confidence plaintiffs' counsel have placed in this court's abilities is gratifying. However, the court believes that instructing the jury in a manner that is both legally sound and understandable to a jury of laypersons would be a herculean task. At the hearing, counsel for Tambrands stated that the verdict form necessary to submit the case to the jury would read more like a bar exam. The court tends to agree. The law of 51 jurisdictions on nine different causes of action would have to be applied at the class trial. The jury would have to be instructed to consider various burdens of proof, and in some cases, contradictory standards of conduct.

Following the class trial, each individual plaintiff class member would still have to have her own trial on the individual issues applicable specifically to her, including individual causation and damages. The court finds that the advantages of a class action do not outweigh the problems of case manageability and jury confusion. Certification under Rule 23(b)(3) shall be denied.

## III. Requirements of Rule 23(b)(2)

In count nine of their complaints, plaintiffs allege that survivors of TSS are at risk for long-term sequelae resulting from their illness, including neurological damage, extreme fatigue, alopecia (hair loss), desquamation (peeling of the skin), and increased risk of development of TSS. Plaintiffs seek the establishment of a program to monitor the future health of the class members and the creation of a fund to pay for that monitoring.

The trial court's decision whether to certify under Rule 23(b)(2) is discretionary. *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir.1995). For class certification under this provision to be appropriate, injunctive or declaratory relief must be the predominant remedy requested for class members. *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 117 (D.Kan. 1995). Plaintiffs' claims under count nine seek injunctive relief in the form of medical monitoring. Since injunctive relief has been sought, certification of a class is legally permissible under Rule 23 (b)(2). *Boughton*, 65 F.3d at 827. Since the relief sought by plaintiffs is primarily money damages, it is not appropriate to certify a class under Rule 23(b)(2). *Boughton*, 65 F.3d at 827; *Heartland Communications*, 161 F.R.D. at 117.

## IV. Certification of Individual Issues under Rule 23(c)(4)

For their final argument, plaintiffs request certification of any individual issues that the court deems fit to certify.

Certification under Rule 23(c)(4)(A) must comply with the other applicable provisions of Rule 23. *Caruso v. Celsius Insulation Resources, Inc.*, 101 F.R.D. 530, 538 (M.D.Pa.1984). Certification under this subdivision should be denied when the noncommon issues are inextricably entangled with the common issues or when the noncommon issues are too predominant to handle on a class basis. *Id.* (quoting 7A Charles A. Wright & Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1790). The issues must be such that their resolution as a class matter would materially advance the disposition of the litigation as a whole. *In re Tetracycline Cases*, 107 F.R.D. 719, 727 (W.D.Mo.1985). The court finds that the noncommon issues are inextricably entangled with the common issues. Further, the court does not believe that the resolution of any of the potentially common issues would materially advance the litigation as a whole.

Given this resolution, the court need not address the defendants' remaining arguments.

**IT IS BY THE COURT THEREFORE ORDERED** that plaintiffs' motion for class certification (Doc. 31, filed in Case No. 94–1195) is hereby denied.