Alga EMIG, et al., Plaintiffs,

v.

The AMERICAN TOBACCO COMPANY, INC., et al., Defendants.

No. Civ.A. 97–1121–MLB.

United States District Court,
D. Kansas,
Wichita, Division.

Dec. 21, 1998.

City, MO, J. Eugene Balloun, Shook, Hardy & Bacon L.L.P., Overland Park, KS, W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for American Tobacco Company Inc., American Brands, Inc., Brown & Williamson Tobacco Corp., and Batus Holdings, Inc.

Larry B. Spikes, Terry L. Malone, Michael G. Jones, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, James P. Muehlberger, Jerome R Doak, Jones, Day, Reavis & Pogue, Dallas, TX, W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for RJ Reynolds Tobacco Company and RJR Nabisco, Inc.

Frederick K. Starrett, Lathrop & Gage L.C., Overland Park, KS, James P. Muehlberger, W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for BAT Industries PLC and Batco, Ltd.

Richard C. Hite, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, Timothy E. Congrove, James P. Muehlberger, Gary R Long, Shook, Hardy & Bacon L.L.P., Kansas City, MO, J. Eugene Balloun, W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Philip Morris Inc.

Lee H. Woodard, Woodard, Hernandez, Roth & Day, Wichita, KS, Timothy E. Congrove, James P. Muehlberger, Gary R Long, J. Eugene Balloun, W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Lorillard Tobacco Company Inc., Lorillard, Inc. and Loews Corp.

Elaine D. Koch, Spencer, Fane, Britt & Browne, Kansas City, MO, James P. Muehlberger, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, Jeannie M. DeVeney, Spencer, Fane, Britt & Browne, Overland Park, KS, W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Tobacco Institute, Inc.

James P. Muehlberger, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, James L. Eisenbrandt, Lynn S. McCreary, Bryan Cave, L.L.P., Overland Park, KS, W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Council for Tobacco Research–USA.

Andrew W. Hutton, Hutton & Hutton, Wichita, KS, for plaintiffs.

James D. Griffin, Blackwell Sanders, Peper, & Martin, L.L.P., Overland Park, KS, Timothy E. Congrove, James P. Muehlberger, Shook, Hardy & Bacon,, L.L.P., Kansas

David G. Seely, John T. Steere, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, James P. Muehlberger, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Liggett Group Inc., Liggett & Meyers, Inc., and Brooke Group, Ltd.

### MEMORANDUM AND ORDER

BELOT, District Judge.

Before the court is the following:

1. Plaintiffs' motion for class certification (Doc. 79);

2. Plaintiffs' memorandum in support of their motion for class certification (Doc. 80);

3. Certain defendants'[1] opposition to plaintiffs' motion for class certification (Doc. 84);

4. Plaintiffs' reply in support of their motion for class certification (Doc. 86); and

6. Certain defendants' objections to certain exhibits submitted in support of plaintiffs' motion for class certification (Doc. 83).

## I. INTRODUCTION

This matter comes before the court upon plaintiffs' motion for class certification (Doc. 79) pursuant to Fed.R.Civ.P. 23(a) and (b)(3) and Local Rule 23.1. In plaintiffs' memorandum, they define the proposed class as follows:[2]

All Kansas residents, as of the date of class notice, who have suffered or presently suffer diseases, medical conditions, and injury (while a resident of Kansas) caused by smoking cigarettes or using smokeless tobacco products, that contain nicotine, designed, manufactured, marketed, distributed and/or sold by defendants.

(Doc. 80 at 1). During arguments on the motion to certify, plaintiffs further restricted the class by 1) excluding smokeless tobacco users from the proposed class (Doc. 96 at 4) and 2) limiting the class to persons whose claims are governed by Kansas law under applicable choice of law principles. Additionally, although not spelled out specifically in the definition, plaintiffs intend that the class include persons who are addicted to cigarettes.

Plaintiffs have abandoned class certification on three of the original seven causes of action alleged in their complaint. Plaintiffs only seek to pursue certification of the following causes of action: 1) negligence; 2) strict liability; 3) breach of implied warranty of merchantability; and 4) breach of implied warranty of fitness for particular purpose. (Doc. 96 at 15). Plaintiffs seek to certify the class under Fed.R.Civ.P. 23(b)(3).[3]

The suit is brought by three plaintiffs who seek to represent the class. All maintain that they started smoking before the age of majority, and that they are unable to discontinue the use of cigarettes because of their addiction to nicotine. With one exception, none allege that they have been diagnosed with or suffer from any of the typical dis-

---

1. Defendants' brief is entitled "Certain Defendants' Opposition to Plaintiffs' Motion for Class Certification." Apparently, there is some question whether the Liggett defendants joined in the brief. However, all defendants oppose plaintiffs' motion to certify this suit as a class action. (Doc. 96 at 2–3)

2. Defendants state that plaintiffs violated Local Rule 23.1(a)(2)(A) by setting forth a proposed class definition in plaintiffs' motion for certification. Local Rule 23.1(a)(2)(A) only requires that the complaint include a proposed definition of the class which plaintiffs provided. The rule does not prohibit later modification of the definition.

3. In addition to monetary damages, plaintiffs seek injunctive relief including a claim for medi-

cal monitoring. Rule 23(b)(2) permits certification in the event that injunctive relief is appropriate with respect to the whole class. Plaintiffs do not argue that certification is proper under Rule 23(b)(2), and in any event, Rule 23(b)(2) certification is improper since the primary relief sought is damages. *See Zapata v. IBP, Inc.,* 167 F.R.D. 147, 162 (D.Kan.1996) (the court chose to consider the action only under Rule 23(b)(3) because plaintiffs were primarily seeking money damages); *Harding v. Tambrands, Inc.,* 165 F.R.D. 623, 632 (D.Kan.1996) (stating that it was not appropriate to certify a class action under 23(b)(2) since plaintiffs primarily sought money damages). For these reasons, the court's analysis is based only on Rule 23(b)(3) considerations.

eases or harms that are associated with smoking.[4] (Doc. 39, Exs. 2, 3; Doc. 45). One plaintiff alleges that he has emphysema.

Plaintiffs assert that defendants conspired to manufacture, promote and sell cigarettes to hundreds of thousands of Kansans through a fraudulent course of conduct spanning numerous decades. The heart of plaintiffs' contentions is that defendants knew and concealed the fact that cigarettes contained the addictive substance nicotine, and that defendants controlled and manipulated the amount of nicotine in cigarettes to create and sustain consumer addiction to their products. (Doc. 8 at 1, 2). The complaint also alleges that each defendant aided and abetted the concealment and manipulation of nicotine by rendering substantial assistance. (Doc. 8 at 6).

Primarily, plaintiffs seek joint and several relief for monetary damages, medical monitoring, and implementation of smoking cessation programs. Plaintiffs propose to try the class action according to the trial plan adopted in *Richardson v. Phillip Morris, Inc.*, No. 96145050/CE212596, slip op. at 4–5 (Cir.Ct. for Baltimore City, Jan. 28, 1998). The adopted trial plan consists of three trial phases.[5]

## II. *DECISIONS TO CERTIFY CLASS ACTIONS*

■ The standard for class certification appears in Fed.R.Civ.P. 23. Plaintiffs have the burden to present an evidentiary basis to show that the action is maintainable as a class action under Rule 23. *See* Local Rule 23.1(d); *see also Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988) (stating that the party seeking to certify a class is required to show "under a strict burden of proof, that all the requirements of [Fed.R.Civ.P.] 23(a) are clearly met." (brackets in original)).

"Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive." *See Reed*, 849 F.2d at 1309. The court has discretion to grant or deny certification, and the decision must be based on "practicalities and prudential considerations." *Id.*

■ When deciding whether to grant certification, the court must first begin with an analysis of the four threshold requirements listed in Rule 23(a). *See Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir.1988). Fed. R.Civ.P. 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Only if the requirements of Rule 23(a) are met must the court examine whether plaintiffs are entitled to certification pursuant to Rule 23(b)(3). *See Adamson*, 855 F.2d at 675.

■ When determining whether certification is proper, the court is prohibited from inquiring into the merits of the suit. *See id.* at 676 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974)). However, the court can go beyond the pleadings to the extent necessary to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) (citing *Manual for Complex Litigation*

---

4. In an affidavit provided by plaintiffs, Dr. Thomas Rosenberg associates cigarette smoking with the following health conditions: lung cancer, cancer of the larynx, chronic obstructive lung disease, cancer of the upper airways, esophagus, pancreas, bladder and other organs, coronary artery disease, cerebrovascular disease, and perinatal complications. (Doc. 39, Ex. 1 at 4).

5. Phase one consists of a class action jury trial of the common factual and legal questions and would involve a determination of whether defendants are liable to the class. Phase two would involve trying the class representatives' causation issues to the class jury for each claim the plaintiffs prevail on in the previous phase. The individual issues of the class members such as class membership, causation and damages would be tried in phase three.

§ 30.11, at 214 (3d ed.1995)). Further, the court must accept as true the allegations of the complaint when deciding whether to certify. *See Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975).

## III. *RULE 23(a) REQUIREMENTS*

### A. *NUMEROSITY AND IMPRACTICABILITY OF JOINDER*

■ Fed.R.Civ.P. 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Local Rule 23.1(a)(2)(A) specifies that a party seeking class certification must identify the size of the class in the complaint. The only mention in plaintiffs' complaint is that there are "[h]undreds of thousands" of Kansans who smoke. Later in their memorandum, plaintiffs assert that there are 392,200 adult smokers in Kansas. No estimate has been provided regarding the number of these smokers who fall within plaintiffs' proposed class definition. However, defendants do not challenge the numerosity requirement. Assuming that nicotine is addictive as alleged, the numerosity requirement is satisfied considering the sheer number of smokers in Kansas. Clearly, joinder of all of these individuals is impractical.

### B. *COMMONALITY*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The commonality requirement in (a)(2) "is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, ——, 117 S.Ct. 2231, 2243, 138 L.Ed.2d 689 (1997) (stating the Third Circuit's interpretation of the commonality requirement in *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610 (1996)); *see also Harding v. Tambrands, Inc.,* 165 F.R.D. 623, 627 (D.Kan.1996) (recognizing that commonality is subsumed within the predominance determination under Rule 23(b)(3)). Since plaintiffs seek to certify the class action under Rule 23(b)(3), there is no reason to separately analyze commonality. Commonality is discussed in detail with the requirements of Rule 23(b)(3) in section IV below.

### C. *TYPICALITY*

■ Fed.R.Civ.P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the court may properly attribute a collective nature to the challenged conduct." *Zapata v. IBP, Inc.,* 167 F.R.D. 147, 160 (D.Kan.1996) (quoting 1 *Newberg on Class Actions* § 3.13, at 3–76 (3d ed.1992)). Typicality is not defeated as long as the class representatives and the class members have claims based on the same legal or remedial theory. *See Adamson,* 855 F.2d at 676. The claims may be different factually but still typical if the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Zapata,* 167 F.R.D. at 160 (quoting 1 *Newberg, supra,* § 3.13, at 3–76). The consequence of typicality is that the named plaintiffs' interests are aligned with the proposed class, and in pursuing their own claims, the named plaintiffs will also advance the interests of the class. *See In re American Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996) (citing 1 *Newberg, supra,* § 3.13, at 3–75).

Plaintiffs argue that their claims are typical of the class's claims because all arise from defendants' common conduct. Plaintiffs assert that the common conduct consisted of defendants' acts of designing, manufacturing, marketing, distributing and selling cigarettes with the knowledge that cigarettes are addictive and with the intent to addict smokers. (Doc. 80 at 10). Additionally, plaintiffs claim that typicality exists because all of the claims are based on the same remedial theory.

Defendants, on the other hand, claim that the named plaintiffs' claims do not satisfy the typicality requirement because no plaintiff or group of plaintiffs can be typical of plaintiffs' proposed class. (Doc. 84 at 15). Defendants focus on the fact that the named plaintiffs have smoked only a limited number of defendants' products, and that their experiences

are significantly narrower than the proposed class. In comparison, the proposed class includes persons who have smoked many other brands of cigarettes than those smoked by the named plaintiffs, the proposed class as a whole incurred different types of injuries, and the proposed class's injuries occurred at different times. Defendants argue that these variations eliminate any typicality.

Defendants' arguments, although not explicitly expressed, seem to implicate an issue of standing to sue defendants from whom the named plaintiffs have never purchased cigarettes. The named plaintiffs do not allege that they have been injured by every defendants' cigarettes. At first glance, this raises an issue of standing because it appears that the named plaintiffs have not been injured by some of the defendants named in the suit. The reason standing appears to be implicated by defendants' arguments is because, in a multiple defendant class certification, both standing and the typicality requirement rely on plaintiffs' ability to provide a connective linkage between the common conduct of all the defendants. *See* 1 *Newberg, supra,* § 3.18, at 3–103 to 3–104.

Discussing plaintiffs' standing to sue multiple defendants furthers the court's analysis of the typicality requirement.

> Questions concerning the ability of a plaintiff to sue multiple defendants when he or she has had business or other contacts or dealings with only some of them can be analyzed from both a standing level and a Rule 23 typicality perspective.... When there is only one defendant involved, the plaintiff's standing normally depends on an allegation that the plaintiff was aggrieved by the defendant's conduct. When there are multiple defendants named who are engaged in parallel conduct, the plaintiff's standing to sue those defendants with whom he or she has not had business or other direct contact does not depend on whether the plaintiff can demonstrate that those additional defendants have injured the plaintiff directly. Rather, the focus for standing purposes is whether the chal-

lenged conduct of such additional defendants is sufficiently related to the plaintiff's alleged grievances or injuries that such additional defendants should be liable or legally accountable to the plaintiffs.

1 *Newburg, supra,* § 3.18, at 3–103 to 3–105 (citations omitted). There are generally two categories of cases where defendants are legally liable to plaintiffs even though they have had no previous contact with defendants: 1) when the defendant's conduct is the result of a conspiracy; or 2) where the plaintiff was injured by joint tortfeasors. *See id.* at 3–106.

▪ Plaintiffs allege that defendants engaged in a conspiracy to manipulate the nicotine content in cigarettes and conceal and suppress information regarding the addictive properties of nicotine.[6] (Doc. 8 at 7). Kansas law recognizes a civil conspiracy claim, which imposes joint and several liability upon co-conspirators. *See Petroleum Energy, Inc. v. Mid–America Petroleum, Inc.,* 775 F.Supp. 1420, 1429 (D.Kan.1991) (citing *Hokanson v. Lichtor,* 5 Kan.App.2d 802, 626 P.2d 214 (1981)). Additionally, plaintiffs allege that all defendants are liable as aiders and abettors that rendered substantial assistance in the alleged course of conduct. (Doc. 8 at 6). "Like civil conspiracy, aiding and abetting is a theory used to impose vicarious liability for concerted action." *State of Kansas v. Ridenhour,* 248 Kan. 919, 811 P.2d 1220, 1231 (Kan.1991); *see also* Restatement (Second) of Torts § 876(b).

Plaintiffs' allegations that defendants are co-conspirators or aiders and abettors are sufficiently related to the allegation that plaintiffs and the class are addicted to cigarettes to confer standing and satisfy typicality. If the allegation is proven, defendants would be jointly and severally liable which is sufficient to confer standing upon plaintiffs to sue all defendants allegedly engaged in the conspiracy or acting as aiders and abettors. In the same respect, plaintiffs' claims are typical of the class that they propose to represent.

---

**6.** The court assumes that plaintiffs did not intend to abandon their conspiracy and aiding and abetting allegations when they limited their com-

plaint to the four causes of action. To do so would clearly raise standing issues.

Typicality exists because plaintiffs' claims arise from the same course of conduct that gives rise to the claims of the proposed class members. *See Zapata*, 167 F.R.D. at 160. By proving conspiracy or aiding and abetting, the named plaintiffs advance the interests of the class because defendants would be jointly and severally liable. In addition, the class's claims would be based on the same legal and remedial theories. Although there may be factual differences among class members' claims, the class claims against all defendants arise out of their alleged concealment and manipulation of nicotine. These factual differences implicate concerns more appropriately addressed in the commonality analysis.

Defendants' reliance on *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90 (W.D.Mo.1997) for their position that plaintiffs' claims are not typical is misplaced. In *Smith*, the court found that a plaintiff's claim "that the brand she smoked (Kool) caused cancer is not typical of another class member's claim that another brand (Viceroy) caused cancer." 174 F.R.D. at 98. *Smith*'s focus is on the harmful individual characteristics of cigarette brands. In comparison, this case involves allegations of conspiracy and aiding and abetting that may impose joint and several liability if proven; a key consideration that was not present in *Smith*. Plaintiffs' claims are typical of the class members who also seek to impose joint and several liability upon defendants for their alleged concerted course of conduct. *See. e.g. Arch v. The American Tobacco Co. Inc.*, 175 F.R.D. 469, 479 (E.D.Pa.1997) ("[p]laintiffs have alleged a course of conduct by defendants that has given rise to plaintiffs' claims which are based upon the same legal theories, thus satisfying the typicality requirement of Rule 23(a)(3)"). In evaluating the typicality requirement, the court is required to accept plaintiffs' allegation as true. Defendants' invitation to consider "individualized claims concerning different brands" (Doc. 84 at 15) would require the court to ignore plaintiffs' course of conduct claims.

### D. *ADEQUACY OF REPRESENTATION*

■ Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." An overlap exists in the typicality and adequacy of representation requirements because if typicality is not present, the class representatives do not have an incentive to vigorously prosecute class claims. *See 1 Newburg, supra*, § 3.22, at 3–128 to 3–129. However, adequacy of representation is broader than typicality because a representative plaintiff may have typical claims but yet have a conflict with the class which precludes certification. *See id.*

■ The analysis of the adequacy of the representation is broken down into two parts: "1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and 2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation." *Zapata*, 167 F.R.D. at 160 (citing *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370–71 n. 13, 72 L.Ed.2d 740 (1982)). Satisfaction of the requirement is essential because the due process rights of the absentee class members bound by the judgment would be implicated otherwise. *See id.* at 161.

Defendants do not challenge the qualifications of the class counsel or their ability to conduct the litigation. (Doc. 96 at 44). In addition, defendants have not argued that the class representatives' claims are antagonistic to the class's claims. The court finds no reason that the adequacy of representation requirement has not been met. Plaintiffs' claims that defendants manipulated and concealed the nicotine levels in their cigarettes are interrelated, if not identical, to the class's claims. For these reasons, the court finds no reason why the three named plaintiffs would be unable to adequately represent the class.

### IV. *COMMONALITY AND THE REQUIREMENTS OF RULE 23(b)(3)*

Since plaintiffs satisfy the numerosity, typicality and adequacy of representation requirements, the court must consider commonality and the requirements of Rule

23(b)(3). Rule 23(b)(3) is predominantly concerned with the vindication of individuals with potentially small recoveries who have little incentive to prosecute an action. *See Amchem*, 521 U.S. at ——, 117 S.Ct. at 2246. Procedurally, it aggregates small claims into something of value providing incentive to pursue the claims. *See id.* (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)).

■ Rule 23(b)(3) requires that:

the court [find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

To summarize, two factors must be present before certification is proper under Rule 23(b)(3): 1) predominance and 2) superiority. "Judicial economy factors and advantages over other methods for handling the litigation as a practical matter underlie the predominance and superiority requirements" of Rule 23(b)(3). 1 *Newburg, supra*, § 4.23 at 4–79.

### A. *PREDOMINANCE*

■ "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at ——, 117 S.Ct. at 2249 (citing 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1777, at 518–19 (2d ed.1986)); *see also Harding*, 165 F.R.D. at 629 ("The predominance requirement ensures that claims of class members will be so similar that prosecution by a few members of the class will be fair"). Predominance can be satisfied in mass tort cases arising from a common cause depending upon the circumstances. *See Amchem*, 521 U.S. at ——, 117 S.Ct. at 2250. However, "[t]he Advisory Committee for the 1966 revision of Rule 23 ... noted that 'mass accident' cases are likely to present 'significant questions, not only of damages but of liability and defenses of liability, ... affecting the individuals in different ways.'" *See id.* (citing Adv. Comm. Notes, 28 U.S.C.App., p. 697). In *Amchem*, the

Court noted the Committee's warning continues to call for caution when "individual stakes are high and disparities among class members great" despite the trend of district court certification of "mass torts" since the late 1970s. *See id.*

■ The Tenth Circuit approach to determine whether common issues predominate over individual ones consists of 1) identifying whether there is a "common nucleus of operative facts" among the issues presented by the suit, and 2) determining whether there are material variations in the elements of the claims presented. *See Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *see also Harding*, 165 F.R.D. at 629; *Edgington v. R.G. Dickinson and Co.*, 139 F.R.D. 183, 190–91 (D.Kan.1991); 1 *Newburg, supra*, § 4.25, at 4–85 (discussing *Esplin* when describing factors courts have looked at to determine whether common issues predominate). Whether common issues predominate is a matter left to the discretion of the district court because the determination is primarily factual. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 827–28 (10th Cir. 1995).

Plaintiffs identify the following common factual and legal issues in support of certification: 1) whether nicotine is addictive; 2) whether defendants knew or should have known that nicotine was addictive; 3) whether defendants denied that nicotine is addictive while knowing that it was addictive; 4) whether defendants manipulated the levels of nicotine in an attempt to cause addiction; 5) whether cigarettes are unreasonably dangerous; and 6) whether smoking exposes individuals to hazardous substances. (Doc. 80 at 13). In addition, plaintiffs assert that evidence will be the same on why the design of cigarettes is defective, how defendants manufactured, promoted and sold cigarettes that are allegedly defective, why defendants acted wrongfully, and why punitive damages are appropriate for every member of the class.

Plaintiffs contend that these are sufficient common issues to justify certification, and that predominance is satisfied because no material variation among the class claims exists. The common issues identified, how-

ever, are primarily common to one aspect of the suit; whether defendants conspired or rendered substantial assistance to manipulate nicotine levels. Plaintiffs fail to acknowledge the enumerable individual issues raised by other elements of the class complaint. After reviewing the common issues in relation to these enumerable individual issues, the court concludes that the predominance requirement is not satisfied. The court's finding is based on the following reasons.

### 1. Determining Whether Someone Is "Addicted" Depends Largely on Matters Unique to Each Class Member

Plaintiffs' complaint focuses on the relatively new theory of addiction-as-injury.[7] Determining addiction requires numerous individual inquiries about class members. *See Arch*, 175 F.R.D. at 488; *see also Barnes v. American Tobacco*, 176 F.R.D. 479, 500 (E.D.Pa.1997), *aff'd* 161 F.3d 127 (3d Cir. 1998) (determining whether someone is addicted requires a highly individualized inquiry). Plaintiffs propose a "working definition" of "nicotine dependence"[8] which actually favors defendants' position because it illustrates the extent of individual questions that would have to be answered to determine whether someone was nicotine dependent. Assuming for purposes of discussion that plaintiffs' definition is accepted, the inquiry would involve questions such as how many cigarettes a day each class member smoked, whether each has been diagnosed as nicotine dependent, how many years each has smoked, and how many times each has attempted to quit smoking. The difficulty is compounded because defendants would be entitled to inquire into each of these individual factors to determine whether a class member is truly addicted. Plaintiffs have proposed no procedure to orchestrate this highly factual inquiry in a way that reduces the individual issues.

### 2. Causation

Individual causation issues also hinder a finding that common issues predominate. The Kansas Products Liability Act (KPLA), Kan.Stat.Ann. § 60–3301 *et seq.*, applies to all of plaintiffs' claims concerning the harmful characteristics or design of cigarettes.

The product liability act applies to all product liability claims regardless of the substantive theory of recovery. Therefore, under K.S.A. 60–3302(c), the provisions of the Act apply to actions based on strict liability in tort as well as negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct.

*Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 126, 795 P.2d 915, 931 (1990). Causation is a prerequisite to recovery under the KPLA regardless of the theory upon which relief is sought. *See Miller v. Lee Apparel Co., Inc.*, 19 Kan.App.2d 1015, 1032, 881 P.2d 576, 589 (1994).

Many individual factors effect causation as recognized by the Fifth Circuit in *Castano*.

The class members were exposed to nicotine through different products, for different amounts of time, and over different time periods. Each class member's knowledge about the effects of smoking differs,

---

**7.** In *Castano*, 84 F.3d at 737, the Fifth Circuit described the injury of nicotine dependence as a "novel and wholly untested theory."

**8.** Plaintiffs have not included the definition in their class complaint or in their briefs. However, the affidavits of Thomas Rosenberg, M.D. and Neil Aldoroty, M.D. state that for purposes of the class action the working definition of the term "nicotine dependence" is the following:

1) All cigarette smokers who have been diagnosed by a medical practitioner as nicotine dependent; and/or

2) All regular cigarette smokers who were or have been advised by a medical practitioner that smoking has had or will have adverse health consequences who thereafter do not or have not quit smoking; and/or

3) Persons who are or have been nicotine dependent as that phrase is defined under the criteria set forth in the American Psychiatric Association's *Diagnostic and Statistical manual of Mental Disorder*, Fourth Edition, 1994; and or

4) Persons who smoke at least 16 cigarettes per day, have been smoking in excess of one year, have tried to quit, and who smoke within the first 30 minutes after arising in the morning.

(Doc. 39, Ex. 1 at 16; Doc. 40, Ex. 34 at 6).

and each plaintiff began smoking for different reasons. Each of these factual differences impacts the application of legal rules such as causation, ... comparative fault, and other affirmative defenses.

84 F.3d at 743 n. 15; *see also Arch,* 175 F.R.D. at 486 (The "[d]ifference in the amount of exposure and injury lead to disparate applications of legal rules, including matters of causation, comparative fault, and the types of damages available to each plaintiff").

■ Plaintiffs propose in their adopted trial plan to try the issue of whether cigarettes cause addiction in phase one of the litigation. (Doc. 80 at 18). Additionally, plaintiffs propose to try the class representatives' causation cases to the jury and the individual causation questions of class members in phases two and three. (Doc. 80 at 18). However, as the court recognized in *Arch:*

> Resolution of the "general causation" question of whether cigarettes are capable of being addictive "is not common under Rule 23(a)(2)." *Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 677 (N.D.Ohio 1995). Unless it is proven that cigarettes always cause or never cause addiction, "the resolution of the general causation question accomplishes nothing for any individual plaintiff." *Id.; see also In re "Agent Orange" Product Liability Litigation,* 818 F.2d 145, 164 (2d Cir.1987) (the "relevant question is not whether Agent Orange has the capacity to cause harm," but rather the "highly individualistic" question of whether "it did cause harm and to whom").

175 F.R.D. at 488; *see also Harding,* 165 F.R.D. at 630 ("A finding of 'general causation' would do little to advance this litigation"). Attempting to answer the general question of whether nicotine is addictive does little to overcome the predominate individualistic causation questions that would have to be answered in phases two and three of the litigation.[9]

### 3. *Affirmative Defenses Raise Individual Questions*

Defendants argue that the defenses of comparative fault, assumption of the risk, and the statute of limitations raise individual issues uncommon to the class. (Doc. 84 at 20). Although the defenses identified by defendants strike at the merits of plaintiffs' claims, a brief analysis is required to make a meaningful determination of the certification issue.

■ Under Kansas law, comparative fault is applicable to both strict liability and implied warranty claims in products liability cases. *See Kennedy v. City of Sawyer,* 228 Kan. 439, 452, 618 P.2d 788, 798 (1980). Kansas permits the comparison of all types of fault regardless of whether it is categorized as contributory negligence, assumption of the risk, or product misuse. *See Prince v. Leesona Corp.,* 720 F.2d 1166, 1171 (10th Cir.1983). As in the causation inquiry, application of comparative fault to the class's claims raises numerous individual issues that prevent a finding of predominance. *See Smith v. Brown & Williamson Tobacco Corp.,* 174 F.R.D. 90, 96–97 (W.D.Mo.1997) (discussing the application of Missouri's comparative fault to plaintiffs' negligence claims).

Plaintiffs argue that comparative fault is inapplicable to the class's claims. Plaintiffs cite *Allman v. Holleman,* 233 Kan. 781, 667 P.2d 296 (1983) and *Sawka v. Prokopowycz,* 104 Mich.App. 829, 306 N.W.2d 354 (Mich.Ct. App.1981), for the proposition that there is no comparative fault when a consumer uses a legal product in a manner that the manufacturer designs it and intends it to be used. (Doc. 96 at 27–28). Determining whether plaintiffs' argument is germane would strike at the merits of the action, an act forbidden when determining whether certification is proper. However, plaintiffs' counsel admits that it is unlikely that a class action could be certified if comparative fault applies. (Doc.

---

**9.** Plaintiffs also seek to determine general causation questions such as whether cigarettes cause other health problems such as heart disease and lung cancer. (Doc. 96 at 20–21). These additional common questions do not overcome the individual causation questions; they only compound them. For every health problem generally caused by cigarettes, members of the class seeking to recover for that type of harm would still have to prove individual causation later in the litigation.

96 at 27). Since it is possible that comparative fault may apply, it is one of the practical considerations that counsels against certification.

Defendants also argue that the statute of limitations creates individual issues that prevent the common issues from predominating. Plaintiffs' complaint alleges that the statute of limitations has been tolled on class members' claims until recently because defendants fraudulently concealed the addictive nature of tobacco. (Doc. 8 at 18).

The Kansas statute of limitations on tort actions does not commence to run until the injury becomes reasonably ascertainable. *See Dearborn Animal Clinic, P.A. v. Wilson,* 248 Kan. 257, 264, 806 P.2d 997, 1002 (1991). Regardless of plaintiffs' claims, defendants are still entitled to raise a statute of limitations defense. If the defense is raised, the court will be required to determine when every class member's addiction became "reasonably ascertainable." Even if the statute was tolled until relatively recently, the court will still have to determine when each class member learned of defendants' alleged concealment or learned that he or she was addicted to cigarettes. Such a determination involves an individual, fact intensive analysis that makes a class action suit an improper method of adjudication of these claims. *See, e.g., Barnes v. The American Tobacco Co.,* 161 F.3d 127, 149 (3d Cir.1998) ("[W]e believe that determining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent class certification").

4. *Whether Cigarettes Were Defective Raises Variations in the Elements of Class Member's Claims*

There are three common elements in a Kansas products liability case based on theories of negligence, breach of implied warranty of merchantability, and strict liability: 1) there was a defect in the product; 2) the defect existed at the time the product left the manufacturer's possession or control; and 3)

the defect caused the injury sustained by the plaintiff. *See Voelkel v. General Motors Corp.,* 846 F.Supp. 1468, 1475–76 (D.Kan. 1994), *aff'd* 43 F.3d 1484 (10th Cir.1994) (tables).

This suit involves many defendants who manufacture or manufactured numerous brands of cigarettes. In addition, defendants have made various changes in the manufacturing process and design of cigarettes throughout the years. (Affidavits of James Myracle, Jr., David E. Townsend, Doc. 84, Exs. 3 and 4). Plaintiffs' negligence, strict liability and breach of implied warranty of merchantability claims are primarily based on the premise that the addictive nature of nicotine creates a defective product. However, absent a finding that every cigarette ever produced has been defective, numerous variations exist in the class members' claims.

Although there is no specific time period covered by the class complaint, the class definition reaches persons who began smoking many decades ago and includes persons who have smoked at different time periods.[10] Plaintiffs allege that throughout the period there were changes made in cigarettes to manipulate nicotine levels. Cigarettes have not been a static product. Because of the variations in cigarettes and the variations among class members in terms of what they smoked and when they smoked, there are variations in the elements of each member's claim. Each would have to show that the product he or she used at a particular time was "defective."

5. *Common Exposure to a Harmful Product Is Insufficient to Satisfy Predominance*

After an analysis of the individual issues raised by this litigation, the court finds that the predominance requirement has not been satisfied. The proposed class is not sufficiently cohesive to warrant adjudication by representation. *See Amchem,* 521 U.S. at ——, 117 S.Ct. at 2249. *Amchem* is particularly relevant on the predominance point. In

---

**10.** Plaintiffs' class definition does not limit the claims to those persons who smoked cigarettes during a specific time period, and no time limitation has been suggested. (Doc. 96 at 59). For

these reasons, the class claims could reach persons who smoked as far back as the 1950s and possibly before, covering virtually five decades of cigarette manufacturing.

*Amchem,* the Court found that the predominance criterion required far more than the class members' shared experience of exposure to asbestos products. The court recognized that numerous individual differences among class members overcame the common issue of the health consequences of asbestos. *See id.* at ——, 117 S.Ct. at 2250.

Similarly, this case involves too many individual issues to find that the predominance requirement is satisfied by the common issue of whether defendants knew nicotine was addictive and manipulated the level of nicotine in cigarettes. The individual issues— nicotine addiction, causation, comparative fault, statute of limitations, and whether each member received a defective product—create far too many variations in claims to support class action adjudication. The number of individual issues raised is a sufficient reason alone to deny certification. However, the court continues with an analysis of the superiority requirement.

### B. *SUPERIORITY*

▮ Rule 23(b)(3) also requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" before certification is proper. The rule lists four factors to be considered in determining whether a class action suit is superior. Fed.R.Civ.P. 23(b)(3)(A)–(D); see also 1 *Newburg, supra,* § 4.28, at 4–113. The Rule 23(b)(3) factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [11] (D) the difficulties likely to be encountered in the management of a class action.

The list is not intended to be exhaustive, and the court should consider other factors rele-

vant to the litigation. 1 *Newburg, supra,* § 4.28, at 4–113.

### 1. *Interest of Individuals in Controlling Prosecution*

The Rules Advisory Committee Notes to the 1966 Amendments to Rule 23 state that the court should inform itself of any pending individual litigation. 39 F.R.D. 62, 104 (1965); *see also* 1 *Newburg, supra,* § 4.29, at 4–115. The Committee notes that the interests of the individuals in conducting separate trials may be so strong that denial of class certification is proper. 39 F.R.D. at 104. The court is aware of only one other suit in the district involving tobacco. *See Burton v. R.J. Reynolds Tobacco Co.,* No. 94–2202– JWL (D.Kan. filed May 25, 1994). *Burton* involves a claim that cigarettes cause cancer—a much narrower claim than this case. For this reason, determining the interests of individuals in pursuing individual litigation involves an element of speculation. However, the factor is still implicated.

In *Georgine v. Amchem Prod. Inc.,* 83 F.3d 610, 633 (1996), *aff'd* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Third Circuit recognized that members of the class had a substantial stake in making individual decisions because the action involved claims for personal injuries and death. The court stated that these types of claims affect plaintiffs' lives and typically involve large awards as opposed to small claims that may be impracticable to maintain. The Third Circuit's consideration is consistent with the purpose of Rule 23(b)(3). As the Supreme Court recognized in *Amchem,* the Advisory Committee "had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' " 521 U.S. at ——, 117 S.Ct. at 2246 (quoting Kaplan, *A Prefatory Note,* 10 B.C.Ind. & Com. L.Rev. 497 (1969)).

In the instant case, members of the proposed class would also have an interest in making individual decisions. The class com-

---

**11.** This factor has little value to the superiority analysis because it "is relevant only when other class litigation has already been commenced elsewhere." 1 *Newberg, supra,* § 4.31, at 4–124.

Generally, 28 U.S.C. §§ 1404 and 1407 should be considered if there is an overlap in class litigations. Neither party has suggested the applicability of either of these sections.

plaint does not allege small claims of the type that the Advisory Committee had in mind when Rule 23(b)(3) was drafted. Rather, plaintiffs allege damages in excess of $75,000 for each plaintiff for costs of medical treatment, loss of income, mental and emotional suffering, humiliation and frustration.[12] Additionally, under the class definition, class members have various health conditions that are likely to vary in degree and severity. The differences may affect tactical decisions such as settlement of the case. Because members of the proposed class have a substantial stake and motivation to make individual decisions, a class action is not superior to individual litigation.

### 2. Other Litigation of Addiction-as-injury Claims

A review of whether other litigation is pending "is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." See 7A Wright and Miller, supra, § 1780, at 568–69. Since there is no pending litigation, there is no risk of inconsistent adjudication or multiplicity of actions at this point. Additionally, plaintiffs do not assert that there is an impending explosion of injury-as-addiction claims that would justify certification of the action.[13]

### 3. Manageability

The manageability factor encompasses the "whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen v. Carlisle &

Jacquelin, 417 U.S. 156, 164, 94 S.Ct. 2140, 2146, 40 L.Ed.2d 732 (1974). This proposed class action implicates numerous practical problems that effect the superiority of pursuing this matter as a class action rather than undertaking individual adjudication. Plaintiffs' proposed trial plan does not overcome the management problems that would arise if the action was certified.

To begin with, there are far too many individual issues raised by this litigation to find that a class action is superior to other methods of adjudication. Plaintiffs' proposed trial plan suggests that the common issues of whether nicotine causes addiction, and whether defendants manipulated nicotine and concealed information about nicotine, would be tried in phase one of the litigation. Phase three would consist of litigating all of the individual issues such as causation, addiction, smoking history and damages.[14] This proposal does not further judicial economy because it would necessarily require some type of individual trial for every class member and would greatly complicate the management of the class action. See, e.g., Zapata v. IBP, Inc., 167 F.R.D. at 162–63 (finding that compensatory damages alone, which were unique to each individual, greatly complicated the management of the class).

■■■ Plaintiffs' proposed trial plan also suggests determining class membership in phase three of the litigation. In order to avoid choice of law concerns that raised problems in other actions involving certification of mass torts,[15] plaintiffs attempt to limit mem-

---

**12.** Unlike Georgine, plaintiffs' class definition would not include claims for death because the definition does not mention claims by representatives of deceased smokers who were addicted to cigarettes. However, plaintiffs' class complaint seeks to recover for various health disorders that implicate the potential for large awards.

**13.** In Arch, plaintiffs took the position that a failure to certify the action would result in thousands of individual trials and certification would ultimately save judicial resources. See 175 F.R.D. at 495. The court found that plaintiffs' argument was pure speculation and the major rationale for class actions—judicial efficiency— was not implicated. See id. Although plaintiffs have not raised this argument, it is relevant to the court's decision. However, there is no evi-

dence that numerous individual trials will occur if certification is denied. In fact, plaintiffs' counsel is unsure whether this action will continue absent class certification. (Doc. 96 at 32).

**14.** The court recognizes that there is some disagreement on whether trying a single plaintiff's claims to multiple juries violates defendants' Seventh Amendment rights. However, reaching that issue is not necessary because the court finds that there are sufficient reasons, other than any Seventh Amendment concern, to deny certification.

**15.** See, e.g., Castano, 84 F.3d at 749–50 (stating that the "complexity of the choice of law inquiry also makes individual adjudication superior to class treatment"); Harding, 165 F.R.D. at 629 (finding that "common issues of law are lacking

bers of the class to persons whose claims are properly disposed of under Kansas law. To do so in diversity actions, the court must apply Kansas choice of law rules to determine whether Kansas law applies to each member's claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Kansas adheres to *lex loci delicti* which provides that the place of the law of the state where the tort occurred applies. *See Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). A tort occurs where the injury occurs. *See id.*

Plaintiffs overlook the difficulty involved in determining if class members' injuries "occurred" in Kansas. For instance, plaintiffs' broadest class injury alleged is addiction. To determine if this injury occurred in Kansas, a conclusion would have to be reached as to each member that they became addicted to cigarettes in Kansas. Only after such consideration is it possible to determine whether each person can be admitted to the class. The process would involve a hearing for every potential plaintiff because defendants would have the right to cross-examine each person about his or her smoking history. The task is unimaginably difficult considering the individual inquiry required to determine addiction. Plaintiffs' attempt to overcome the choice of law concerns recognized by other courts greatly enhances the unmanageability of the class.

### 4. *Immature Tort Claim*

Additionally, the court finds that a class action suit is an inferior method of adjudication because plaintiffs' allegation that addiction is a cognizable injury is a novel concept under Kansas law.[16] The court balks at the prospect of binding such a large and diverse class of Kansans to decisions of one court and one jury when such novel issues have never been presented to a court in any individual litigation within the state. *See, e.g., Castano*, 84 F.3d at 747 (recognizing the difficulty of certifying a mass tort without a

"prior track record" to make the predominance or superiority analysis); *see also Arch*, 175 F.R.D. at 494–95 (finding that any superiority analysis would be based on speculation since there had been no prior track record of individual trials).

The court's concern would be lessened if there was a prior track record of individual litigation in Kansas courts that establishes that a class action suit is superior to individual litigation of plaintiffs' claims; however, none is present. Based on factors relevant to this particular litigation, the court concludes that a class action is not superior and individual litigation of the novel issues raised is preferable. The *Castano* court best summarized the superiority of individual litigation over a class action when a tort concept is relatively immature.

> Through individual adjudication, the plaintiffs can winnow their claims to the strongest causes of action. The result will be an easier choice of law inquiry and a less complicated predominance inquiry. State courts can address the more novel of the plaintiffs' claims, making the federal court's *Erie* guesses less complicated. It is far more desirable to allow state courts to apply and develop their own law than to have a federal court apply "a kind of Esperanto [jury] instruction."

84 F.3d at 750 (citations omitted). A class action may be a more appropriate method of adjudication if numerous, similar suits arise in the future and there is a proven track record that a class action is superior.

## V. *CERTIFICATION OF INDIVIDUAL ISSUES*

Lastly, plaintiffs raise the issue of certifying particular common issues pursuant to Fed.R.Civ.P. 23(c)(4)(A). (Doc. 86 at 3). Rule 23(c)(4)(A) provides that a class action may be certified "with respect to particular issues" when appropriate. The provision authorizes certification even if common issues do not predominate over the individual

---

due to the many variations in the law of the various jurisdictions on each of the claims").

**16.** The court does not reach the merits of plaintiffs' complaint by determining whether addic-

tion is a cognizable injury under Kansas law. Rather, the court merely recognizes that the concept involves a matter of tort law that has not previously been decided in Kansas.

questions because the common issues can be separated by the court and certified for independent class treatment. *See Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996); *see also* 7B Wright and Miller, *supra*, § 1790 at 276; 1 *Newburg, supra*, § 4.25, at 4–81.

The provision is intended to advance judicial economy by permitting adjudication of any issues common to the class even though the entire litigation may not satisfy the requirements of Rule 23. *See* 7B Wright and Miller, *supra*, § 790, at 271. In other words, "when common questions do not predominate when compared to all questions that must be adjudicated to dispose of a suit, Rule 23(c)(4) asks whether a suit limited to the unitary adjudication of a particular common issues will achieve important and desirable advantages of judicial economy and efficiency." 1 *Newburg, supra*, § 4.25, at 4–81. Certification is improper if "noncommon issues are inextricably entangled with the common issues, or ... the noncommon issues are too unwieldy or predominant to be handled adequately on a class action basis." Wright and Miller, *supra* § 1790, at 276.

Essentially, the relevant inquiry under Rule 23(c)(4)(A) is whether resolution of the particular common issues "would materially advance the disposition of the litigation as a whole." *Harding*, 165 F.R.D. at 632. Plaintiffs' argument lacks specific detail regarding which common issues should be certified or how certification of the common issues will advance the litigation. However, certifying any of the common questions previously identified will not advance this litigation. As already discussed, adjudication of the common questions does very little to advance plaintiffs' claims. Also, the common issues are inextricably entangled with the individual issues. For example, the general causation questions of whether cigarettes cause the harms alleged by plaintiffs are invariably bound up in their claims that cigarettes caused their injuries. Adjudicating any of the common issues will not materially advance the litigation as a whole.

17. The court finds no reason to rule on defendants' objections to certain exhibits submitted in support of plaintiffs' motion for certification

## VI.   CONCLUSION

The claims alleged by the named plaintiffs satisfy the numerosity, typicality and adequacy of representation requirements of Rule 23(a). However, the court refuses to exercise its discretion to grant certification because the claims do not satisfy either the predominance or superiority requirements of Rule 23(b)(3). A point of particular importance to the court's decision is the *Amchem* call for caution in "mass tort" cases when individual stakes are high and class disparities great. Plaintiffs' claims are by no means insubstantial and there are far too many individual issues to justify certification. For these reasons, plaintiffs' motion for class certification (Doc. 79) is denied.[17]

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed five pages for all plaintiffs combined and shall strictly comply with the standards enunciated by this court in *Comeau v. Rupp*, 810 F.Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed five pages combined for all defendants. No reply shall be filed.

IT IS SO ORDERED.

(Doc. 83). The objections are moot after denial of plaintiffs' motion.