Janet **THOMPSON**, Rita Pettit, and Demont Harris, individually, and on behalf of all other Minnesota residents similarly situated, Plaintiffs,

v.

**AMERICAN TOBACCO COMPANY, INC.;** American Brands, Inc.; R.J. Reynolds Tobacco Company; RJR Nabisco, Inc.; Batus, Inc.; Brown and Williamson Tobacco Corporation; Batus Holdings, Inc.; Philip Morris, Inc.; Philip Morris Companies, Inc.; Lorillard Tobacco Company, Inc.; Lorillard, Inc.; Loews Corporation; United States Tobacco Company; UST, Inc.; The Tobacco Institute, Inc.; and The Counsel for Tobacco Research—USA, Inc., Defendants.

No. Civ. 3–96–888 PAM/JGL.

United States District Court,
D. Minnesota.

Nov. 22, 1999.

Charles Selcer Zimmerman, Barry G. Reed, Robert Randall Hopper, Jennifer K. Sustacek, James P. Watts, Zimmerman Reed, Mpls., MN, Robert L. Redfearn, for Janet Thompson, individually, and on behalf of all other Minnesota residents similarly situated, Rita Pettit, Doris Heisner, Demont Harris, plaintiffs.

John Walter Getsinger, Leonard Street and Deinard, Mpls., MN, James A. O'Neal, Jack Michael Fribley, Bridget M. Ahmann, Faegre & Benson, Mpls., MN, Mary T. Yelenick, Chadbourne & Parke, New York City, Byron E. Starns, Jr., Leonard Street and Deinard, St. Paul, MN, W. Bruce Wold, Kevin J. Dunne, Micki S. Singer, Sedgwick Detert Moran & Arnold, San Francisco, CA, for American Tobacco Company, Inc., American Brands, defendants.

James Stuart Simonson, Jonathan M. Redgrave, Kacy C. Kleinhans, Gray Plant Mooty Mooty & Bennett, Mpls., MN, Hugh R. Whiting, Jones Day Reavis & Pogue, Cleveland, OH, Jerome R. Doak, Margaret I. Lyle, Jones Day Reavis & Pogue, Dallas, TX, Ricky L. Shackelford, Jones Day Reavis & Pogue, Los Angeles, CA, for R.J. Reynolds Tobacco Company, defendant.

James Stuart Simonson, Jonathan M. Redgrave, Kacy C. Kleinhans, Gray Plant Mooty Mooty & Bennett, Mpls., MN, Hugh R. Whiting, Jones Day Reavis & Pogue, Cleveland, OH, for RJR Nabisco, Inc., defendant.

James A. O'Neal, Jack Michael Fribley, Bridget M. Ahmann, Faegre & Benson, Mpls., MN, W. Bruce Wold, Kevin J. Dunne, Micki S. Singer, Sedgwick Detert Moran & Arnold, San Francisco, CA, for Batus, Inc., defendant.

James A. O'Neal, Jack Michael Fribley, Bridget M. Ahmann, Faegre & Benson, Mpls., MN, Dara D. Mann, Faegre & Benson, Mpls., MN, W. Bruce Wold, Kevin J. Dunne, Micki S. Singer, Sedgwick Detert Moran & Arnold, San Francisco, CA, for Brown and Williamson Tobacco Corporation, Batus Holdings, Inc., defendant.

Perry Morton Wilson, III, Peter W. Sipkins, Robert A. Schwartzbauer, Paul James Robbennolt, Dorsey & Whitney, Mpls., MN, Jack L. Lipson, Arnold & Porter, Washington, DC, Craig E. Gustafson, Gary R. Long, John K. Sherk, III, Jennifer Brown, Shook Hardy & Bacon, Kansas City, MO, Lonnie D. Nunley, III, Hunton & Williams, Richmond, VA, Michael L. Zaleski, Quarles & Brady, Madison, WI, for Philip Morris, Inc., Philip Morris Companies, Inc., defendants.

Michael Robert Docherty, Doherty Rumble & Butler, St. Paul, MN, David George Martin, Rider Bennett Egan & Arundel, Mpls., MN, Craig E. Gustafson, Gary R. Long, John K. Sherk, III, Elizabeth Hoene Martin, R. Stanton Farmer, for Lorillard Tobacco Company, Inc., Lorillard, Inc., defendant.

David George Martin, Rider Bennett Egan & Arundel, Mpls., MN, Craig E. Gustafson, Gary R. Long, John K. Sherk, III, Elizabeth Hoene Martin, R. Stanton Farmer, for Loews Corporation, defendant.

George W. Flynn, Hal A. Shillingstad, Flynn & Gaskins, Mpls., MN, Bill Livingston, for Tobacco Institute, Inc., The, defendant.

Robert Lawrence Purdy, Kirk O. Kolbo, Maslon Edelman Borman & Brand, Mpls., MN, Steven Klugman, Steve Michaels, Debevoise & Plimpton, New York City, Harry Zirlin, for Council for Tobacco Research—USA, Inc., defendant.

Clifford M. Greene, Greene Espel, Mpls., MN, for Clifford Greene.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Plaintiffs' Motion for Class Certification and Plaintiffs' Motion to Reserve Individual Injury and Damage Claims. A class certification hearing was held on October 15, 1999 at which time the Court heard oral arguments in support of and in opposition to Plaintiffs' motion. For the following reasons, the Court denies Plaintiffs' motions.

## BACKGROUND

Plaintiffs bring this suit alleging that Defendants, who are cigarette manufacturers, promoters, and distributors, engaged in an industry-wide fraudulent scheme to induce people to smoke and to keep them smoking. Specifically, Plaintiffs contend that Defendants induced people to smoke by falsely denying the existence of addictive and hazardous agents in their products, through advertisements and other means, and generally concealing the truth about their products from the public. (*See* Third Am.Compl. ¶¶ 18–42.) Plaintiffs further contend that Defendants engaged in "premeditated conduct to addict smokers" by not only placing nicotine, an addictive agent, in their products but also by "manipulating nicotine content to maximize its effect on smokers." (Pls.' Mem. in Supp. of Class Certification at 22.) Plaintiffs allege that this scheme has directly caused addiction and disease and has exposed them to serious latent illnesses, thereby necessitating Plaintiffs' participation in smoking cessation and medical monitoring programs. (*See* Third. Am.Compl. ¶¶ 16, 18.) Plaintiffs have produced voluminous documentation in support of these factual allegations, many of which were generated in the Minnesota tobacco case. (*See* Pls.' App.)

Plaintiffs assert that Defendants' allegedly fraudulent course of conduct constitutes common law fraud and statutory fraud under Minn.Stat. §§ 325F.67, 325F.68, 325F.69, 325D.43. (*See* Third Am.Compl. ¶¶ 43–50.) Plaintiffs also allege that Defendants' conduct entitles them to recovery under the novel tort of "medical monitoring." (*See id.* ¶¶ 51–59.) Under these theories, Plaintiffs seek the following relief: disgorgement of profits; compensatory damages; the establishment of a smoking cessation program and a court-administered medical monitoring program funded by the Defendants; costs, prejudgment interest; and any other relief Plaintiffs are entitled to under the law. (*See id.* at 18.) Plaintiffs have moved to reserve the individual injury and damage claims and proceed only with the request for cessation and medical monitoring at this time. (*See* Pls.' Mot. to Reserve Claims.)

548

Plaintiffs seek to prosecute their claim as a class action, representing themselves and others similarly situated. Plaintiffs propose the following class for certification:

All Minnesota residents as of September 3, 1996, who, while residents of Minnesota, smoke or smoked cigarettes manufactured or promoted by the Defendants, and, who desire to participate in a program designed to assist them in cessation of smoking and/or monitor their medical condition to promote early detection of disease caused by, contributed to, or exacerbated by cigarette smoking. Expressly reserved from the class claims are any claims for personal injury.

(Third Am.Compl. ¶ 6.) By definition then, the proposed class includes current smokers who suffer from smoking-related illnesses; former smokers who suffer from smoking-related illnesses; current smokers who do not currently suffer from smoking-relating illnesses but who are at an increased risk of suffering from such illnesses; and former smokers who do not currently suffer from smoking-relating illnesses but who are at an increased risk of suffering from such illnesses. The class also includes "smokers" who simply want to stop smoking. This apparently includes individuals who are addicted to cigarettes and wish to stop smoking, individuals who are not addicted to cigarettes, but desire to stop smoking with the assistance of a cessation program, and individuals who no longer smoke but wish to participate in a cessation program in order to remain smoke-free. (See Pls.' Mem. in Supp. of Class Certification at 45.) Plaintiffs do not place a qualitative threshold on class membership. That is, Plaintiffs do not define the term "smoker" or exclude individuals who have smoked as few as one cigarette manufactured or promoted by Defendants within the class period from the class. Therefore, the Court analyzes the proposed class as if such individuals are proper class members. The parties estimate that, if certified, the class would include approximately 700,000 individuals. (See Pls.' Mem. in Supp. of Class Certification at 37; Defs.' Mem. in Opp'n to Class Certification at 28.)

Defendants oppose class certification, arguing that Plaintiffs fail to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court declines to certify Plaintiffs' proposed class. Accordingly, the Court also denies Plaintiffs' Motion to Reserve Individual Injury and Damage Claims.

## DISCUSSION

### A. Class Certification

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. In order to satisfy the threshold requirements of Rule 23, the named plaintiffs must establish that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. See Fed.R.Civ.P. 23(a); see also Castano v. American Tobacco Co., 84 F.3d 734, 740 (5th Cir.1996). If these prerequisites are met, the named plaintiffs must then show that the action is maintainable under one of Rule 23(b)'s subsections. In this case, Plaintiffs' proposed class is predicated on Rule 23(b)(2) and (b)(3). (See Third Am.Compl. ¶¶ 12 and 13.) Accordingly, the Court may certify this class only if it finds that either: (1) Defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole," or (2) "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is a superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(2) & (3). The Court exercises broad discretion in determining whether such criteria are met. See Reiter v. Sonotone Corp., 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979); Parkhill v. Minnesota Mut. Life Ins. Co., 188 F.R.D. 332, 337 (D.Minn.1999).

For the purposes of this motion, the Court accepts as true all of the allegations in the Complaint. *See Johns v. DeLeonardis,* 145 F.R.D. 480, 482 (N.D.Ill.1992). Therefore, the Court will assume that Defendants engaged in a single, pervasive, and fraudulent course of conduct to induce Plaintiffs to smoke and prevent them from stopping smoking. The Court will also assume that Defendants' course of conduct subjected Plaintiffs to addiction as well as serious manifest and latent illnesses. When examining a proposed class for certification, however, the Court must also conduct a rigorous analysis of the Rule 23 prerequisites. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Although the strength of a plaintiff's claim should not affect the certification decision, a district court "certainly may look past the pleadings to determine whether the requirements of rule 23 have been met." *Castano,* 84 F.3d at 744. Indeed, "[g]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.* (citing *Manual for Complex Litigation* § 30.11 (3d ed.1995)). For instance, merely relying on the pleadings would essentially write the predominance requirement out of Rule 23 because such a facial analysis ignores the reality of the litigation process. *Id.* at 744–745. Absent a consideration of how cases are tried, it would be impossible for the Court to determine whether common issues would in fact predominate. *Id.* at 745.

### 1. *Rule 23(a): Threshold Requirements*

Although the numerosity requirement in this case is clearly satisfied, Defendants argue that Plaintiffs' claim fails to meet the additional threshold requirements of commonality, typicality, and adequacy.˙ (*See* Defs.' Mem. in Opp'n to Class Certification at 37–67.) Defendants further argue that even if Plaintiffs' proposed class does meet such preliminary requirements, it does not meet the predominancy or superiority require-

ments of Rule 23(b)(3).[1] (*See id.* at 36–64.) The Court addresses each disputed requirement under Rule 23 in turn.

### a. *Commonality*

Commonality is not required for every question raised in a proposed class action. Rather, commonality exists when the "legal question 'linking the class members is substantially related to the resolution of the litigation.' " *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) (quoting *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir.1982)). Under this approach, while commonality may be satisfied, the class may fail under the "far more demanding" predominance criterion. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

In this case, the commonality requirement is satisfied, as Plaintiffs have set forth several common questions of fact and law. (*See* Third Amend.Compl. ¶ 10.) Most notably, Plaintiffs seek to establish that Defendants engaged in a single "deceptive and fraudulent course of conduct concerning the health hazards of smoking and addictive characteristics of cigarettes." (Pls.' Mem. in Supp. of Class Certification at 38.) This factual and legal question is necessary to the resolution of the litigation and is common to all class members. That is, in order to prevail each class member must, at a minimum, establish that Defendants engaged in a fraudulent course of conduct. This overarching common question is sufficient to meet the commonality requirement under Eighth Circuit Court of Appeals standards. The fact that individualized issues are implicated does not impact this determination. *See DeBoer,* 64 F.3d at 1174.

### b. *Typicality*

In addition to meeting the commonality requirement of Rule 23, Plaintiffs must also show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.

---

1. Although pleaded by Plaintiffs, Plaintiffs fail to address certification under Rule 23(b)(2) in their briefs. (*See* Third Am.Compl. ¶ 12.) Neverthe-

less, because Plaintiffs pleaded certification under Rule 23(b)(2), the Court also addresses that issue.

R.Civ.P. 23(a)(3). Typicality analysis is closely related to the commonality and adequacy inquiries of Rule 23(a)(2) and (4). *See General Tel. Co.,* 457 U.S. at 157, n. 13, 102 S.Ct. 2364; *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir.1977). In an effort to give the typicality requirement independent meaning, however, the Eighth Circuit has incorporated a quantitative aspect into typicality analysis that "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Id.* at 829–830. Factual variations will not necessarily preclude certification if "the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996).

■ Here, the named Plaintiffs appear to have grievances identical to those of the class. Each Plaintiff is an alleged victim of Defendants' allegedly fraudulent scheme to induce people to smoke and keep them smoking. In addition, each Plaintiff seeks the similar relief, namely, participation in a cessation program and/or medical monitoring program. Further, the probable defenses in this case—assumption of risk and the statute of limitations—meet the typicality requirement in that they will likely be asserted against each Plaintiff. (*See* Defs.' Mem. in Opp'n to Class Certification at 54–55.) The fact that the defenses may be successful against some Plaintiffs and not others does not render the named Plaintiffs' claims atypical. The Court therefore finds that Rule 23(a)'s typicality requirement is satisfied.

### c. *Adequacy*

■ The fourth precondition for class certification is a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Determining whether this precondition is met entails a two-pronged inquiry. First, the representatives' attorneys must be qualified and willing and able to prosecute the case competently and vigorously. *See Parkhill,* 188 F.R.D. at 339. Second, the named Plaintiffs' interests must not diverge from those of the class as a whole. *See id.* De-

fendants do not contend that named Plaintiffs' attorneys are inadequate to represent the class, nor is there any indication that Plaintiffs' attorneys are lacking commitment to the class. Therefore, the first prong of the adequacy inquiry is met. A determination of the second prong, however, requires more discussion.

Named Plaintiffs Janet Thompson, Rita Pettit, and Demont Harris appear to share the class' interest in participating in a cessation and/or medical monitoring program. In addition, there is no indication at this time that the named Plaintiffs' interests in developing such programs will be "at the expense of other class members or will, in any other way, be antagonistic to the class' interests." *Paxton,* 688 F.2d at 563. Defendants argue, however, that by reserving the issue of personal injury and damages (to make class certification more likely) the named Plaintiffs have jeopardized the class members' ability to bring personal injury claims in a later lawsuit. (*See* Defs.' Mem. in Opp'n to Class Certification at 65–67.) If the named Plaintiffs have in fact jeopardized the class members' potential claims for personal injury damages, they would be deemed to have interests "antagonistic" to those of the class. *See Arch v. American Tobacco Co.,* 175 F.R.D. 469, 479–480 (E.D.Pa.1997).

■ The Court finds that the named Plaintiffs' efforts to reserve personal injury and damage claims may, in fact, jeopardize the class members' rights to bring such claims in a subsequent case. The governing legal principle is that of res judicata, which precludes subsequent litigation when certain conditions are met. *See Youngstown Mines. Corp. v. Prout,* 266 Minn. 450, 124 N.W.2d 328, 340 (1963). Under Minnesota law res judicata principles apply to "not only to every matter which was actually litigated, but also as to every matter which might have been litigated, therein." *Id.* (quoting *Bazille v. Murray,* 40 Minn. 48, 41 N.W. 238 (1889); *Swank v. St. Paul City Ry. Co.,* 61 Minn. 423, 63 N.W. 1088 (1895)). Thus, even if the Court permits the reservation of issues in this case, whether a subsequent court would honor such a reservation is, at best, undeterminable at this time. *See Small v. Lorillard*

*Tobacco Co.*, 252 A.D.2d 1, 679 N.Y.S.2d 593, 601–602 (1 Dept., 1998). A subsequent court may very well find that individual injury and damage claims should have been litigated in this lawsuit. Indeed, as recognized in *Small,*

> [R]epresentatives who 'tailored the class claims in an effort to improve the possibility of demonstrating commonality' obtained this 'essentially cosmetic' benefit only by 'presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action.

*Id.* (quoting *Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595, 606–607 (S.D.N.Y.1982)). This possible prejudice to class members is simply too great for the Court to conclude that the named Plaintiffs' interests are aligned with those of the class. Therefore, the Court finds that Plaintiffs' proposed class action does not satisfy all of the prerequisites of Rule 23(a). Although Plaintiffs' failure to meet these prerequisites precludes class certification, the most glaring difficulty with Plaintiffs' proposed class is that it fails to meet the requirements of Rule 23(b).

### 2. *Rule 23(b) Requirements*

#### a. *Rule 23(b)(3)—Predominance and Superiority*[2]

■ In order to successfully move for class certification under Rule 23(b)(3), a plaintiff must establish that questions common to the class predominate over any questions affecting only individual members and that a class action is superior to other available methods of adjudicating the controversy. In determining predominance and superiority, the Court considers the following non-exclusive factors:

**2.** Because the Rule 23(b)(3) discussion is instructive and determinative of certification under Rule 23(b)(2), the Court analyzes Rule 23(b)(3) first.

**3.** At oral argument Plaintiffs conceded that common law fraud requires individual proof of reliance. Plaintiffs also stated that although they allege common law fraud in their Third Amended Complaint, they do not intend to maintain that allegation if the class is certified. Nevertheless, because recovery under common law fraud requires a finding of individual reliance and be-

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability and undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). In the present case this analysis reveals that Plaintiffs' Complaint is riddled with individual questions that predominate over questions common to the class. The Court will address each issue requiring individual determination in turn below. Before engaging in that discussion, however, it is necessary to address a vigorously contested issue: the role of causation in this lawsuit. Defendants argue that Plaintiffs' claim requires each Plaintiff to establish reliance. (*See* Defs.' Mem. in Opp'n Class Certification at 36–41, 46–48.) According to Defendants, Plaintiffs must prove that each class member began smoking or is currently unable to stop smoking as a direct result of Defendants' allegedly fraudulent scheme. (*See id.*) Plaintiffs argue that proof of individual causation is not necessary under either the tort of medical monitoring or statutory fraud.[3] (*See* Pls.' Reply Mem. at 10–13, 22.)

Plaintiffs urge this Court to recognize the tort of medical monitoring as a proper claim for relief under Minnesota law. The tort of medical monitoring has developed in the common law to compensate plaintiffs who have been exposed to toxic substances. *See In re Paoli Railroad Yard PCB Litig.*, 916 F.2d 829, 849 (3d Cir.1990); *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 240

cause individual proof of reliance precludes class certification, the Court summarily denies class certification of Plaintiffs' common law fraud theory of recovery. *See M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn.1992) (noting that in order to sustain a claim of common law fraud under Minnesota law, a plaintiff must prove that he reasonably relied on defendant's representation); *see also Castano*, 84 F.3d at 745 (holding that proof of individual reliance precludes class certification).

(1996). The Third Circuit Court of Appeals aptly explained that the tort was created,

> [I]n an effort to accommodate a society with an increasing awareness of the danger and potential injury caused by widespread use of toxic substances, courts have begun to recognize claims like medical monitoring, which can allow plaintiffs some relief even absent present manifestations of physical injury. More specifically, in the toxic tort context, courts have allowed plaintiffs to recover for emotional distress suffered because of the fear of contracting a toxic exposure disease, the increased risk of future harm, and the reasonable costs of medical monitoring or surveillance.

*Paoli,* 916 F.2d at 850 (citations and footnotes omitted). Although recognized by some courts, the tort of medical monitoring is still novel and considered a "non-traditional tort." *Id.* at 849.

▆▆▆▆ Given the novelty of the tort of medical monitoring and that the Minnesota Supreme Court has yet to recognize it as an independent theory of recovery, this Court is not inclined at this time to find that such a tort of exists under Minnesota law. For the purposes of this motion, however, the Court will assume that medical monitoring is a proper theory of recovery. Both parties agree that if medical monitoring is recognized as an independent tort, the seven part articulated in *Redland Soccer Club, Inc. v. Dep't of the Army,* 548 Pa. 178, 696 A.2d 137, 145–146 (1997), controls. Under *Redland,* a plaintiff must prove, *inter alia,* that defendants caused plaintiff's exposure to a proven hazardous substance. *See id.* In this case, then, Plaintiffs must establish that they began smoking because of Defendants' fraudulent scheme. Proof of reliance is therefore inherent in a medical monitoring tort claim and must be proven as to each plaintiff. It is widely recognized that individual proof of reliance precludes class certification. *See Castano,* 84 F.3d at 745; *Barnes v. American Tobacco Co.,* 161 F.3d 127, 145–147 (3d Cir.1998); *Smith v. Brown & Williamson*

*Tobacco Corp.,* 174 F.R.D. 90, 95 (W.D.Mo. 1997); *Emig v. American Tobacco Co.,* 184 F.R.D. 379, 389–390 (D.Kan.1998); *Insolia v. Philip Morris, Inc.,* 186 F.R.D. 535, 546–547 (W.D.Wis.1998); *see also McMerty v. Burtness,* 72 F.R.D. 450, 455 (D.Minn.1976) ("[P]roof of actual individual reliance ... would present individual questions of fact at trial"); *but see In re Pennsylvania Diet Drug Litig.,* No. 9709–3162 at 21 (Pa.Com. Pl., Philadelphia County March 12, 1999) (finding that individual proof of reliance under *Redland* does not preclude class certification). Therefore, even if the Court could find that the tort of medical monitoring exists under Minnesota law, the issue would not be proper for determination on a class-wide basis.

A more interesting question is whether individual proof of causation or reliance is required under the Minnesota consumer fraud statutes. *See* Minn.Stat. §§ 325D.44, 325F.67, & 325F.69. This is a highly contentious issue. It is clear, however, that if proof of individual reliance is an essential element of Plaintiffs' statutory fraud claim, the proposed class cannot be certified. *See Castano,* 84 F.3d at 745.

▆▆▆▆ A study of Minnesota law reveals that the Minnesota legislature intended to relax the requirements necessary to prove a consumer fraud violation. *See State by Humphrey v. Philip Morris, Inc.,* 551 N.W.2d 490, 495–496 (Minn.1996); *State by Humphrey v. Alpine Air Prods., Inc.,* 500 N.W.2d 788, 790 (Minn.1993). In order to effectuate that intent, the legislature fashioned a consumer fraud regime that does not always require individual proof of reliance.[4] *See* Minn.Stat. §§ 325D.44, 325F.67, 325F.68, 325F.69; *Philip Morris,* 551 N.W.2d at 496–497; *Alpine Air,* 500 N.W.2d at 790; *see generally* Gary L. Wilson & Jason A. Gillmer, *Minnesota's Tobacco Case: Recovering Damages Without Individual Proof of Reliance Under Minnesota's Consumer Protection Statutes,* 25 Wm. Mitchell L.Rev. 567 (1999) (examining the role of reliance under

---

4. Defendants correctly point out that a "fraud-on-the-market" theory does not exist outside of the securities context absent direction from the legislature. (*See* Defs.' Mem. in Opp'n to Class

Certification at 39–40.) It appears, however, that the Minnesota legislature has devised such a scheme in its consumer fraud statutes.

the Minnesota's consumer protection statutes). Under Minnesota law, proof of reliance is necessary only where a plaintiff seeks to recover damages rather than purely injunctive relief. *See Parkhill,* 188 F.R.D. at 344–345 (stating that because plaintiffs seek to recover damages from defendant, "the plaintiffs must demonstrate individual reliance upon representations made by defendant to prevail on either of their statutory claims"); *Garay v. Beers,* No. C5–97–2268, 1998 WL 373082, at *1–2 (Minn.Ct.App. July 7, 1998) (noting that although the Consumer Fraud Act is broader in scope than the common law, the elements of common law misrepresentation apply, including proof of reliance, when the relief sought is in the form of damages); *Peterson v. Honeywell, Inc.,* No. C2–93–1795, 1994 WL 34200, at *5 (Minn.Ct. App. Feb. 8, 1994) ("[To] establish a claim of damages for misrepresentation under the trade and consumer protection statutes, the plaintiff must establish the elements of common law misrepresentation, including justifiable reliance and proximate cause for pecuniary loss."). To clarify, a plaintiff seeking injunctive relief need not establish reliance, but merely a "legal nexus" between the act and injury, which may be satisfied by demonstrating that defendants "intended to induce reliance." *LeSage v. Norwest Bank Calhoun–Isles,* 409 N.W.2d 536, 539–541 (Minn. Ct.App.1987). Conversely, a plaintiff seeking damages must establish actual reliance upon the fraudulent conduct of the defendant. *See Parkhill,* 188 F.R.D. at 344–345.

■ In this case, the Court must determine if the relief sought is, in fact, injunctive, or instead a disguised request for compensatory damages. *See Arch,* 175 F.R.D. at 483. At first glance the relief sought by Plaintiffs appears to be injunctive because Plaintiffs seek the establishment of programs rather than the payment of money. Upon closer examination, however, it becomes apparent that although Plaintiffs' request for the establishment of a medical monitoring program is injunctive in nature, Plaintiffs' request for the establishment of a cessation program may be nothing more than a disguised attempt for compensatory damages. The determinative distinction between the two remedies is the Court's role in the imple-

mentation of the programs. The cessation program proposed by Plaintiffs would not be court-administered and would, therefore, essentially constitute a pre-payment of damages. "A court may simply order a defendant to pay a plaintiff a certain sum of money ... and [t]he plaintiff may or may not choose to use that money [as intended by the court]." *Id.* (quoting *Day v. NLO, Inc.,* 144 F.R.D. 330, 335–336 (S.D.Ohio 1992)). The proposed court-administered medical monitoring program, on the other hand, does constitute injunctive relief. Although the program would be funded by Defendants, it would be developed and managed by the court, thereby nullifying the risk that Plaintiffs would misappropriate the money. *See id.*

In sum, the Court finds that Plaintiffs' request for the establishment of a cessation program is non-injunctive in nature, thereby requiring proof of individual reliance. As stated above, such individualized proof precludes class certification. *See Castano,* 84 F.3d at 745; *see also Clay v. American Tobacco Co.,* No. 97–cv–4167, slip op. (S.D.Ill. June 29, 1999) (noting that Illinois, Kentucky, North Carolina, District of Columbia, and Delaware consumer fraud statutes require proof of reliance, thereby precluding class certification); *Chamberlain v. American Tobacco Co.,* No. 1:96 CV 2005, 1999 U.S.Dist. LEXIS 5843 (N.D.Ohio Apr. 12, 1999) (denying class certification because the Ohio consumer protection statute requires proof of reliance). In order to establish the causation necessary for Plaintiffs' proposed court-administered medical monitoring program, however, Plaintiffs must merely establish that Defendants "intended to induce reliance." *LeSage,* 409 N.W.2d at 541. Because such a requirement focuses solely on the conduct and intent of Defendants, inquiries of each Plaintiff are not mandated. Accordingly, proof of causation under Minnesota's consumer protection statutes does not preclude class certification of Plaintiffs' request for medical monitoring.

■ With the issue of causation and reliance decided, the Court now turns to a discussion of additional individual issues that

predominate over common issues, thereby precluding class certification. Plaintiffs argue that this case can be decided without regard to the conduct or condition of Plaintiffs. In other words, Plaintiffs seek to avoid any question as to their own personal responsibility in this matter by shifting focus to the conduct of Defendants. Although establishing that Defendants' conduct was fraudulent is necessary to the determination of this claim, the conduct and condition of each Plaintiff must also be considered. Each time the conduct or condition of Plaintiffs arises, an individualized inquiry must be undertaken. The first such instance is proof of individual injury. It is clear that in order to sustain this lawsuit Plaintiffs must have suffered some injury as a result of Defendants' conduct. *See Philip Morris,* 551 N.W.2d at 495 (explaining that each Minnesota consumer fraud statute creates a private right of action for any party injured directly or indirectly by a violation of the statute). Here, Plaintiffs claim nicotine addiction and an increased risk of contracting a smoke-related illness. (Third Am.Compl. ¶¶ 16–18, 35–40.) The parties dispute the type of proof necessary to establish such injuries and the effect of such proof on class certification. Plaintiffs contend that proof of injury can be established on a class-wide basis without engaging in individualized inquiries of each Plaintiff. Defendants argue that both addiction and increased risk of disease cannot be proven unless an individualized inquiry is undertaken. The Court agrees with Defendants.

It is clear that whether an individual is addicted to nicotine is a "highly individualistic inquiry" that would require "a mini-hearing on the merits of each individual's case to determine injury." *Barnes,* 161 F.3d at 134. It is equally clear that such individual proof of addiction would predominate over questions common to the class and thereby preclude class certification. *See Barnes,* 161 F.3d at 134–135; *Chamberlain,* 1999 U.S.Dist. LEXIS 5843, at *44–45; *Emig,* 184 F.R.D. at 389; *Geiger v. American Tobacco Co.,* 181 Misc.2d 875, 696 N.Y.S.2d 345 (1999). Plaintiffs attempt to avoid this result by vehemently denying that addiction is the linchpin of this litigation. Rather, Plaintiffs assert that "having trouble quitting"—the claimed injury—is somehow distinct from addiction. (*See* Pls.' Mem. in Supp. of Class Certification at 43–45.) Plaintiffs claim that such injury can easily be proven by simply having each Plaintiff sign an affidavit stating that he is having difficulty quitting and that he wishes to participate in a cessation program sponsored by Defendants. (*See id.* at 44–45.) There are several problems with this approach. First, it essentially asks the Court to assume injury based purely on the conduct of Defendants. Proving Defendants' fraudulent conduct without regard to its effect on Plaintiffs, however, is not enough to establish injury. Plaintiffs must also prove that they suffered a specific injury as a result of Defendants' conduct. *See Chamberlain,* 1999 U.S.Dist. LEXIS 5843, at *45 ("In order to establish liability on their claims, plaintiffs must demonstrate that defendants' conduct caused them injury"); *Small,* 679 N.Y.S.2d at 599 (noting that defendants' alleged deception is not sufficient to constitute injury; plaintiffs must prove addiction or other distinct injury to show that they were harmed by defendants).

Second, Plaintiffs assume that the affidavits would constitute conclusive proof of injury. In reality, even if a questionnaire could be used to establish a prima facie evidence of injury, Defendants would be permitted to cross-examine each class members regarding that alleged injury. *See Barnes,* 161 F.3d at 134–135. Therefore, Plaintiffs' assertion that individualized proof of injury would not be burdensome, or render the litigation unmanageable, is short-sighted. Eventually, each and every Plaintiff would be subject to cross-examination.

The third problem with Plaintiffs' approach is that it asks the Court to find a distinction where none exists. The Court finds that there is nothing more than a semantic difference between the injury asserted by Plaintiffs—"having difficulty quitting"—and addiction. However phrased, addiction to cigarettes is the injury that Plaintiffs allege, it is one of the subjects upon which they claim to have been defrauded, and it is why Plaintiffs seek participation in a defendant-funded cessation pro-

gram.[5] (Third Am.Compl. ¶¶ 35, 37, 40, 48, and 50.) In short, addiction truly is the linchpin of this litigation. Therefore, in order to prove injury in this case, each Plaintiff must establish an addiction to cigarettes. With a class of approximately 700,000 individuals, the assessment necessary to make such a finding would be impracticable and unmanageable and would certainly predominate over questions common to the class. *See Barnes,* 161 F.3d at 134–135.

Addiction is also directly implicated by Plaintiffs. Plaintiffs' papers are replete with allegations that Defendants defrauded Plaintiffs by denying the addictive nature of their products. (*See* Pls.' Mem. in Supp. of Class Certification; Third Am.Compl.) Plaintiffs further argue Defendants should be held liable because they designed "personal choice out of the product." (Pls.' Mem. in Supp. of Class Certification at 22–23.) Plaintiffs explain that while they may have initially chosen to smoke, they did not "choose" to continue smoking because the addictive nature of Defendants' products precluded free choice. (*See id.*) This argument has the unintended effect of placing addiction in issue. More specifically, to rebut Plaintiffs' argument that they are, in essence, addicted to cigarettes, Defendants would have the opportunity to fully assess each and every Plaintiff to determine if they are, in fact, addicted to cigarettes. As stated above, such a process necessarily precludes class certification.

In addition to proof of addiction, each Plaintiff seeking participation in a medical monitoring program must establish injury.[6] In particular, each Plaintiff must prove that he or she requires medical monitoring above and beyond that of the general non-smoking

public. Plaintiffs argue that no individualized inquiry as to this injury is required because every "smoker"[7] necessarily requires such medical monitoring. (*See* Pls.' Mem. in Supp. of Class Certification at 32.) Plaintiffs explain that because they have been exposed to proven hazardous substances through the fraudulent actions of Defendants, they "suffer significantly increased risks of contracting serious latent diseases," thereby making periodic diagnostic testing and examinations reasonably necessary. (Third Am.Compl. ¶¶ 54–56.) Plaintiffs implicitly argue that every person who has smoked as few as *one* cigarette manufactured, promoted, or distributed by Defendants has been so injured because "[t]here is no safe minimum dose of any carcinogen." (Pls.' Mem. in Supp. of Class Certification at 14.) In addition, "[p]hysical effects of smoking occur instantaneously upon smoke inhalation and can be documented in every smoker. Accordingly, all smokers, by definition and [sic] experience physical impact despite being essentially asymptomatic." (*Id.* at 34.) Plaintiffs acknowledge that each Plaintiff may require different levels of medical monitoring depending on his or her smoking history. Plaintiffs assert, however, that the individualized nature of such programs need not preclude class certification because once liability is established, the nature and extent of the medical monitoring program can be decided by medical professionals and a court-supervised administrator. (*See id.* at 48–49.)

Even if fashioning individualized medical monitoring programs for each Plaintiff does not preclude class certification, the Court finds that assessment of each Plaintiff's smoking history is required in order to prove the type of injury to be remedied by medical

---

5. There are various clinical and lay definitions of "addiction." The crux of the issue here, however, is the nature of Plaintiffs' alleged injury: the inability to stop smoking or remain smoke free without the assistance of a cessation program. It is the nature of the injury that demands individual inquiries, not the label attached to that injury. Therefore, whether couched in terms of "addiction," "dependence," or "having difficulty quitting," the nature of the alleged injury, and the individual proof necessary to establish such an injury, is the same.

6. Although Plaintiffs' claim under the tort of medical monitoring cannot be maintained as a class action, the Court must now determine if Plaintiffs' request for a medical monitoring is an appropriate class-wide remedy for Defendants' alleged violation of the Minnesota consumer protection statutes.

7. As noted above, under the class definition, the term "smoker" includes any person who has smoked one cigarette manufactured, promoted, or distributed by Defendants within the class period.

monitoring. Simply, an individual's need for medical monitoring above and beyond that of the general non-smoking public cannot be determined on a class-wide basis. As noted in *Barnes,*

> In order to prove the program he requires, a plaintiff must present evidence about his individual smoking history and subject himself to cross-examination by the defendant about that history. This element of the medical monitoring claim therefore raises many individual issues.

161 F.3d at 146. Plaintiffs would also need to establish that their need for medical monitoring is solely due to smoking and not other risk factors such as weight, pre-existing illness, or predisposition to illness.

■ In addition, it is important to note that an increased risk of disease due to "mere exposure to a toxic substance" by itself is not a sufficient injury under Minnesota law. *Werlein v. United States,* 746 F.Supp. 887, 901 (D.Minn.1990), *vacated,* 793 F.Supp. 898 (D.Minn.1992). Rather, Plaintiffs must prove that they have "present injuries" that increase their risk of future harm. *Id.* at 904. The Court is not satisfied that Plaintiffs can prove such present and future injury without eventually engaging in individual inquiries. Although Plaintiffs implicitly argue that one cigarette is sufficient to cause the type of injury required under Minnesota law, that assertion would be vigorously contested by Defendants. (*See* Defs.' Mem. in Opp'n to Class Certification at 24–25.) If Defendants' argument were to prevail, individual inquiries would be necessary to determine who among the Plaintiffs is in fact injured. Once again, with a class of 700,000 individuals, such an assessment would be impracticable and would certainly predominate over common questions.

■ The second insurmountable problem precluding class certification in this case is the individual nature of applicable defenses. While Defendants will presumably assert all defenses against all Plaintiffs, an individual inquiry is necessary to determine whether such defenses will be successful. Of particular concern in this regard is Defendants' assertion of a statute of limitations defense against each and every Plaintiff. (*See* Defs.'

Mem. in Opp'n to Class Certification at 54–55.) Under Minnesota law, "[a] cause of action accrues and the statute of limitations begins to run when ... 'some' damage has occurred." *Herrmann v. McMenomy & Severson,* 590 N.W.2d 641, 643 (Minn.1999). This threshold requirement is met if the following elements are satisfied: (1) the plaintiff exhibits a cognizable physical manifestation of the disease or injury, and (2) there is evidence of a causal connection between the disease or injury and the defendant's product, act, or omission. *See Hildebrandt v. Allied Corp.,* 839 F.2d 396, 398 (8th Cir.1987). Given the individual nature of those elements, particularly the first, accrual of the statute of limitations will differ from plaintiff to plaintiff. Determining whether a class member's claim is barred by the statute of limitations would take thousands of "mini-trials." Thus, the statute of limitations issue predominates over common issues in this case. *See Barnes,* 161 F.3d at 149 (determining the applicability of the statute of limitations predominates over questions common to the class).

■ In addition to insurmountable predominance issues, Plaintiffs also cannot establish that the class method is the superior method of trying this lawsuit. Plaintiffs' primary argument in support of a finding of superiority is that a class action is the only viable remedy for Plaintiffs given the enormous financial burden of independently pursuing litigation. (*See* Pls.' Mem. in Supp. of Class Certification at 47.) Although it is difficult to ignore this reality, it is not a sufficient reason to "headlong plunge into an unmanageable and interminable litigation process." *Barreras Ruiz v. American Tobacco Co.,* 180 F.R.D. 194, 199 (D.P.R.1998).

b. *Rule 23(b)(2)—Cohesiveness*

Although not addressed by either party in their briefs, Plaintiffs also seek certification under Rule 23(b)(2), which requires that Defendants must have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." (*See*

Third Am.Compl. ¶ 14.) Subsection (b)(2) class actions are, by definition, limited to claims in which injunctive relief is sought. As discussed in detail above, Plaintiffs' request for the establishment of a cessation program is not injunctive in nature and, therefore, cannot be certified under 23(b)(2). When medical monitoring is the proposed relief, however, it may be deemed to be injunctive for the purposes of 23(b)(2) if the plaintiff requests a court administered monitoring program, as is the case here. *See Barnes,* 161 F.3d at 142. Therefore, it appears that Rule 23(b)(2) may be satisfied as to Plaintiffs' request for medical monitoring. However, the same problems that plague Plaintiffs' 23(b)(3) argument—the predominance of individual issues—also preclude certification under 23(b)(2). More specifically, Rule 23(b)(2) includes an implicit "cohesiveness" requirement, which precludes certification when individual issues abound. *See id.* at 143. Plaintiffs' Motion for Class Certification under Rule 23(b)(2) is therefore denied.

### B. Reservation of Individual Injury and Damage Claims

Plaintiffs' Motion for Reservation of Individual Injury and Damage Claims is predicated on class certification. (*See* Pls.' Mem. in Supp. of Reservation of Issues at 16–17.) Because the Court has denied Plaintiffs' Motion for Class Certification, Plaintiffs' motion to reserve issues must also be denied.

### CONCLUSION

For the foregoing reasons, and upon all of the files, records, and proceedings herein, Plaintiffs' Motions for Class Certification and Reservation of Issues are DENIED.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Class Certification (Clerk Doc. No. 121) is **DENIED.**

2. Plaintiffs' Motion for Reservation of Issues (Clerk Doc. No. 111) is **DENIED.**